# HEIKE *v.* UNITED STATES.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 520.   Argued January 9, 1913.—Decided January 27, 1913.

There is a clear distinction between an amnesty for crime committed and the constitutional protection under the Fifth Amendment from being compelled to be a witness against oneself.

The obvious purpose of the act of February 25, 1903, c. 755, 32 Stat. 854, 904, granting to witnesses in investigations of violations of the Sherman Act immunity against prosecution for matters testified to, was to obtain evidence that otherwise could not be obtained; the act was not intended as a gratuity to crime, and is to be construed, as far as possible, as coterminous with the privilege of the person concerned.

Evidence given in an investigation under the Sherman Act does not make a basis under the act of February 25, 1903, for immunity of the witness against prosecutions for crimes with which the matters testified about were only remotely connected.

Granting a separate trial to one of several jointly indicted for conspiracy is within the discretion of the trial judge, reviewable only in case of abuse.

Even if there may have been an abuse in some instances of indicting under § 5440 for conspiracy instead of for the substantive crime itself, liability for conspiracy is not taken away by its success, and in a case such as this, there does not appear to be any abuse.

Evidence showing that a conspiracy had continued before and after the periods specified in the indictment, held in this case not inadmissible against a defendant present at the various times testified to.

192 Fed. Rep. 83, affirmed.

THE facts, which involve the extent of immunity granted under the act of February 25, 1903, c. 755, 32 Stat. 854, 904, are stated in the opinion.

*Mr. John B. Stanchfield,* with whom *Mr. George S. Graham* and *Mr. Frederick Allis* were on the brief, for petitioner:

The immunity statute herein pleaded in bar is a grant of amnesty from the sovereign, operating by way of a pardon from the Government. It bears no analogy, either in conditions of acquirement or in mode of operation, to the constitutional privilege of the Fifth Amendment.

There is a fundamental distinction between the constitutional privilege and the statutory immunity. It is apparent on the very face thereof.

The first proceeds upon the theory of a shield against compulsory self-incrimination, given by sovereign to citizen.

The second proceeds upon the theory of a pardon or amnesty, given by the Government to the citizen.

Even if the immunity should receive a strict and narrow construction because it is "in derogation of the sovereign power to punish," and public policy may favor a narrow, and is opposed to a broad, view of the immunity provision, on the other hand, the pardon theory of immunity affords a complete refutation of any narrow rule of construction, and public policy requires a broad construction of the immunity provision.

The plain language of the statute itself shows that it confers general amnesty, and should operate as a pardon, and not in the way the old constitutional privilege does. See act of January 24, 1862, § 103, Rev. Stat.; § 859, Rev. Stat.; act of January 24, 1862, c. 11, 12 Stat. 333; § 860, Rev. Stat.; act of February 25, 1868, c. 13, § 1; 15 Stat. 37; act of February 11, 1893, 27 Stat. 443; *Counselman* v. *Hitchcock*, 142 U. S. 547; *Brown* v. *Walker*, 161 U. S. 591.

The absurdity and impossibility of imposing all the conditions and limitations of the constitutional privilege shows that the immunity statute was intended to operate as a grant of amnesty or pardon.

The public policy of the statute shows that it should operate as a grant of amnesty or pardon. *United States* v. *Armour*, 142 Fed. Rep. 819, 826.

The weight of authority shows that the immunity statute is an act of general amnesty, and therefore should operate as a pardon from the Government. *Brown* v. *Walker*, 161 U. S. 591; *Burrell* v. *Montana*, 194 U. S. 572, 578; *Hale* v. *Henkel*, 201 U. S. 43, 67; *United States* v. *Price*, 96 Fed. Rep. 962; *United States* v. *Swift*, 186 Fed. Rep. 1002. *State* v. *Murphy*, 107 N. W. Rep. 470, distinguished.

The pardon or amnesty theory of the immunity statute affords a complete refutation (1) of every argument advanced by the Government, (2) of every ground for the opinion of the learned trial court, save one, (3) and of every ground assigned by the learned Court of Appeals without exception, in opposition to the plea in bar herein.

The authorities cited by the Government for its contentions, or those of the court below, are not in point, if the immunity statute be treated as a statute of amnesty.

There are but three cases in which the witness has pleaded the immunity statute in bar to a prosecution. *United States* v. *Armour*, 142 Fed. Rep. 808; *United States* v. *Swift*, 186 Fed. Rep. 1002; *State* v. *Murphy*, 107 N. W. Rep. 470.

It would seem to follow from this review of cited cases, none of which support the contention of the Government that the immunity statute of 1903 is merely a defense against self-incrimination, requiring to be pleaded as a privilege, and extending no further than the exclusion of testimony given; nor anything against the contention that the statute grants general amnesty to witnesses, as this court has said, operating in every case to which it is applicable, *ex proprio vigore* as a pardon does.

The petitioner's former testimony was "concerning" the "transaction, matter or thing" on account of which he is being prosecuted, within the meaning of the statute; although the particular offence for which he has been indicted was not the direct subject of the inquiry at which

he testified, yet it was incidentally discovered, led up to and prosecuted by means of his testimony.

The word "concerning" should receive the broadest possible construction. *Brown* v. *Walker*, 161 U. S. 623; *United States* v. *Burr*, 25 Fed. Cas. 40; *Counselman* v. *Hitchcock*, 142 U. S. 564, 562; *Hale* v. *Henkel*, 201 U. S. 67; *Boyd* v. *United States*, 116 U. S. 616, 629; *People* v. *Forbes*, 143 N. Y. 219, 228; *Am. Lithographic Co.* v. *Werckmeister*, 221 U. S. 603, 611.

Whether or not the immunity statute should receive a broad application is a political question, and the policy adopted by Congress is final and binding on all.

Public policy is a political question, and it is the province of Congress, in the first place, to determine the public policy of every statute it enacts. *Pennsylvania* v. *Wheeling*, 18 How. 440; *Rhode Island* v. *Massachusetts*, 12 Pet. 737, 738; *Luther* v. *Borden*, 7 How. 42; *William* v. *Suffolk &c.*, 13 Pet. 420; *Foster* v. *Neilson*, 2 Pet. 253; *Head Money Cases*, 112 U. S. 598; *United States* v. *Rauscher*, 119 U. S. 418, 419; *United States* v. *Collins*, 25 Fed. Cas. 550; *United States* v. *Armour*, 142 Fed. Rep. 826.

The pleadings, on the plea in bar, afforded sufficient evidence on the question of relevancy to make it error to direct the verdict on the special trial of the plea.

The Circuit Court of Appeals erred in holding that petitioner was entitled to no immunity because he was subpœnaed and testified as an officer of the corporation under investigation at the anti-trust proceeding, where he gave the evidence he now relies on. *State* v. *Nowell*, 58 N. H. 314; *Brown* v. *Walker*, 161 U. S. 602; *Hale* v. *Henkel*, 201 U. S. 69–70. *Wilson* v. *United States*, 221 U. S. 361, distinguished. And see *B. & O.* v. *Int. Com. Comm.*, 221 U. S. 612; *Am. Lith. Co.* v. *Werckmeister*, 221 U. S. 611; *Int. Com. Comm.* v. *Baird*, 194 U. S. 25.

The court below erred in denying the motion of the defendant Heike for a separate trial. He was unlawfully

prejudiced by being tried together with the other defendants.

No man can receive a fair trial if he is forced to stand in a background of fraud and knavery created by the acts of others but which necessarily throw their dubious gloom over his own conduct and impart a sinister significance to his most innocent acts. *White* v. *The People*, 81 Illinois, 338; *State* v. *Oxendine*, 107 Nor. Car. 783.

In addition, the defendant was greatly prejudiced by the fact that during the course of the trial three of the other defendants pleaded guilty. This turn of events should, it is submitted, have induced the court to grant to the defendant Heike a separate trial. *United States* v. *Matthews*, Fed. Cas. No. 15741*b*; *Krause* v. *United States*, 147 Fed. Rep. 444.

While the lower court had discretion upon the motion for a severance, *United States* v. *Marchant*, 12 Wheat. 480; *United States* v. *Ball*, 163 U. S. 662, it does not follow, however, that the granting or denial of the motion is not subject to review by this court. *O'Connell* v. *Pennsylvania Co.*, 118 Fed. Rep. 991; *Osborne* v. *The Bank*, 9 Wheat. 738, 866; *Krause* v. *United States*, 147 Fed. Rep. 444; *White* v. *People, supra*; *Morrow* v. *The State*, 14 Lea (Tenn.), 483; *Watson* v. *The State*, 16 Lea, 604; *State* v. *Desroche*, 47 La. Ann. 651.

It was error to convict petitioner on the sixth count, for conspiracy.

It has become customary for prosecutors to charge conspiracy rather than the commission of actual crime, in their indictments, especially statutory crimes of the class under consideration. Although relying on the same evidence, they find it easier to convince a jury of secret conspiracy than of a palpable crime; it opens the door to metaphysical speculation in place of dry proof; the inquiry is into intentions rather than acts; it is a reversion to all the evils of the old practice when the trial was of a

conspiracy in the minds of the conspirators without overt acts to show it. This is abuse. See *United States* v. *Kissel,* 173 Fed. Rep. 823, 828; Wharton's Criminal Law, § 1402.

The circumstantial evidence, from which alone the jury inferred petitioner's participation in and knowledge of the frauds in question, was not legally sufficient for those purposes; the learned trial court erred in allowing the jury to draw such inference, and the learned Court of Appeals erred in affirming the judgment in that respect.

The learned trial court committed reversible error in admitting in evidence the so-called "pink books." *Chicago Lumbering Co.* v. *Hewitt,* 64 Fed. Rep. 314; *Kent* v. *Garvin,* 1 Gray, 148; *Gould* v. *Hartley,* 187 Massachusetts, 561; *Norwalk* v. *Ireland,* 68 Connecticut, 1; *Swan* v. *Thurman,* 112 Michigan, 416; *People* v. *Mitchell,* 94 California, 550; *Price* v. *Standard Life Co.,* 90 Minnesota, 264; *Chaffee* v. *United States,* 18 Wall. 516.

The admission of hearsay evidence, in addition to the ordinary error, violated the right of accused to be confronted with the witnesses against him. United States Constitution, 6th Amendment; *Motes* v. *United States,* 178 U. S. 458; *Kirby* v. *United States,* 174 U. S. 47; Cooley on Constitutional Limitations, 7th ed., p. 451; *People* v. *Bromwich,* 200 N. Y. 385; *State* v. *Thomas,* 64 Nor. Car. 74; *United States* v. *Angell,* 11 Fed. Rep. 34, 43; *People* v. *Goodrode,* 132 Michigan, 542.

The trial court committed reversible error in allowing in evidence acts and declarations of a co-conspirator thirteen years prior to the conspiracy. *Logan* v. *United States,* 144 U. S. 263; *Train* v. *Taylor,* 51 Hun (N. Y.), 215; *State* v. *Crofford,* 121 Iowa, 395; *Williams* v. *Dickinson,* 28 Florida, 90; *Wilson* v. *People,* 94 Illinois, 299; *People* v. *Irwin,* 77 California, 494; *State* v. *Moberly,* 121 Missouri, 604.

*Mr. Assistant Attorney General Denison,* with whom *Mr. Henry L. Stimson* and *Mr. Felix Frankfurter* were on the brief, for the United States:

The plea of immunity was not well founded. *Hale v. Henkel,* 201 U. S. 43, 69; *Brown v. Walker,* 161 U. S. 591; *United States v. Swift,* 186 Fed. Rep. 1002; *United States v. Armour,* 142 Fed. Rep. 808; *State v. Murphy,* 128 Wisconsin, 201; *State v. Warner,* 13 Lea (Tenn.), 52, 62–64; *In re Kittle,* 180 Fed. Rep. 946, 948 (So. Dist., N. Y.); *United States v. Kimball,* 117 Fed. Rep. 156, 163, 166, 168.

The immunity provisions are statutes in derogation of essential governmental powers, and as such should not be extended beyond the purpose of their enactment. *Louisville Railway v. Kentucky,* 161 U. S. 677, 685; *United States v. Burr,* 25 Fed. Cas., pp. 39–40; *Hale v. Henkel, supra; American Lithographic Company v. Werckmeister.* 221 U. S. 603; Wigmore on Evidence, § 2192.

The purpose of the immunity statutes, as shown by their structure and their historical evolution, was to prevent the obstruction of the specified prosecutions by the exercise of the constitutional privilege. This purpose was accomplished by an exchange of immunity for the privilege. There is nothing either in the terms of the act or its history to indicate any intention of granting a bonus in addition to this exchange.

The form of the act of February 11, 1893, is a balance indicating an exchange. The clause beginning "But" is in relation to and a plain exchange for the clause which withdraws the "excuse" from testifying on the ground of incrimination.

Also the word "concerning" indicates a real connection with a crime analogous to the connection which would raise the privilege.

The theory of petitioner's brief, that the purpose of Congress was to "encourage volunteer witnesses" and to "persuade" them to testify, by giving them "a reward"

of absolution from all crimes, has nothing whatever to base itself on. It was repudiated by Judge Carpenter in the *Swift Case,* supra, and by Wigmore in the passage quoted, *supra.*

Congress has been exceedingly conservative in the enactment of statutes granting immunity. Instead of passing a general immunity statute, it has gone step by step, granting no greater immunity than was necessary for the enforcement of the various commerce laws. Section 860 of the Revised Statutes; *Counselman* v. *Hitchcock,* 142 U. S. 547; act of February 11, 1893 (27 Stat. 443, see appendix); *American Lithographic Co.* v. *Werckmeister,* 221 U. S. 603, 611; *Brown* v. *Walker,* 161 U. S. 591; *Foote* v. *Buchanan,* 113 Fed. Rep. 156; act of February 25, 1903, *supra; Hale* v. *Henkel, supra; United States* v. *Armour, supra;* act of June 30, 1906 (34 Stat. 798, appendix); act of March 2, 1907, c. 2564, 34 Stat. 1246; *United States* v. *Kimball, supra.*

No possible public policy calls for an extension of the immunity statute to the giving of innocent evidence not protected by the constitutional privilege. *State* v. *Murphy, supra.*

None of the evidence adduced by Heike was incriminating, and none of it could have been withheld by him under the constitutional privilege. *United States* v. *Burr, supra; Brown* v. *Walker, supra; Queen* v. *Boyes,* 1 B. & S. 311, 321; *Ex parte Irvine,* 74 Fed. Rep. 960; *United States* v. *Price,* 163 Fed. Rep. 904, 907; *Hickory* v. *United States,* 151 U. S. 303; *Hayden* v. *Williams,* 96 Fed. Rep. 279, 281–282; *Wilson* v. *United States,* 221 U. S. 361; *Dreier* v. *United States,* 221 U. S. 394; *B. & O.* v. *Int. Com. Comm.,* 221 U. S. 612.

The immunity statutes do not grant immunity excepting for offenses under the acts to which they refer. As to evidence tending to incriminate a witness of other offenses entirely unrelated to such acts, he still retains the consti-

tutional privilege. *Beutell* v. *Magone*, 157 U. S. 154, 157, 158; *State* v. *Ellsworth*, 131 Nor. Car. 773; *Commonwealth* v. *Daly*, 4 Gray (Mass.), 209; *Rudolph* v. *State*, 128 Wisconsin, 222, 226.

The admission of the so-called "pink books" on the trial of the plea of not guilty was not error.

An unnecessarily complete foundation was laid for these books. *Chicago Lumbering Co.* v. *Hewitt*, 64 Fed. Rep. 314; *Miss. Logging Co.* v. *Robsen*, 69 Fed. Rep. 773, 781, 782 (C. C. A. 8th C.); *Greene* v. *United States*, 154 Fed. Rep. 401; *Kerrch* v. *United States*, 171 Fed. Rep. 366, 369; *Grunberg* v. *United States*, 145 Fed. Rep. 81, 91; *Bacon* v. *United States*, 97 Fed. Rep. 35, 40–41; 1 Wigmore on Evidence, § 1521, pp. 1888–89, and § 1530, pp. 1895–96; *Continental Bank* v. *National Bank*, 108 Tennessee, 374.

The admission on the main trial of the testimony of Spitzer concerning the early history of the conspiracy was not error. *United States* v. *Kissell, supra; Wood* v. *United States*, 16 Pet. 342, 360–361; *Bottomly* v. *United States*, 1 Story, 135; *United States* v. *36 Barrels*, 7 Blatch. 469, 472; *Standard Oil Co.* v. *United States*, 221 U. S. 1; 3 Greenleaf on Evidence, 16th ed., § 93; *State* v. *Walker, supra*.

MR. JUSTICE HOLMES delivered the opinion of the court.

The petitioner was indicted for frauds on the revenue, and, in the sixth count, under Rev. Stat., § 5440, for a conspiracy to commit such frauds by effecting entries of raw sugars at less than their true weights by means of false written statements as to the same. Rev. Stat., § 5445. Act of June 10, 1890, c. 407, § 9, 26 Stat. 131, 135. He pleaded in bar that, in 1909 and 1910, answering the Government's subpoena, he had testified and produced documentary evidence before a Federal grand jury investigating alleged breaches of the Sherman Anti-trust Act, that the testimony and documents concerned the subject-

matter of the present indictment and that therefore he was exempted from liability by the act of February 25, 1903, c. 755, 32 Stat. 854, 904, as amended June 30, 1906, c. 3920, 34 Stat. 798. There was a replication; issue was joined; a trial was had upon the plea, in which the court directed a verdict for the Government, 175 Fed. Rep. 852; leave was given to plead over; a premature attempt was made to bring the case before this court, 217 U. S. 423, and then there was a trial on the merits in which the petitioner was found guilty on the sixth count. The Circuit Court of Appeals affirmed the judgment, 192 Fed. Rep. 83, 112 C. C. A. 615. Whereupon a writ of certiorari was granted by this court.

The investigation in which the petitioner testified concerned transactions of the American Sugar Refining Company. See *Pennsylvania Sugar Refining Co.* v. *American Sugar Refining Co.*, 166 Fed. Rep. 254. The petitioner was summoned to produce records of the American Sugar Refining Company and to testify. He appeared, produced the records and testified that he was the person to whom the subpœnas were addressed, secretary of the New York corporation and secretary and treasurer of the New Jersey corporation of the same name. He summed up what the books produced showed as to the formation of the New York company. He identified his signature to four checks of the company in a transaction not in question here—the Kissel-Segal loan mentioned in *United States* v. *Kissel*, 218 U. S. 601, 608. These checks were not used in the present case. He testified as to the ownership of the Havemeyer and Elder Refinery in Brooklyn. Finally he produced a table showing how many pounds of sugar were melted each year from 1887 to 1907 in each refinery, this table of course not purporting to represent the petitioner's personal knowledge, but being a summary of reports furnished by the company's different employés, and, the Government contends, volunteered by him.

The act of February 25, 1903, c. 755, 32 Stat. 854, 904, appropriates $500,000 for the enforcement of the Interstate Commerce and Anti-Trust Acts, "Provided, that no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said Acts; Provided further, that no person so testifying shall be exempt from prosecution or punishment for perjury committed in so testifying." (This last proviso was added only from superfluous caution and throws no light on the construction. *Glickstein* v. *United States*, 222 U. S. 139, 143, 144.) By the amendment of June 30, 1906, c. 3920, 34 Stat. 798, immunity under the foregoing and other provisions "shall extend only to a natural person who, in obedience to a subpœna, gives testimony under oath or produces evidence, documentary or otherwise, under oath."

The petitioner contended that, as soon as he had testified upon a matter under the Sherman Act, he had an amnesty by the statute from liability for any and every offence that was connected with that matter in any degree, or, at least, every offence towards the discovery of which his testimony led up, even if it had no actual effect in bringing the discovery about. At times the argument seemed to suggest that any testimony, although not incriminating, if relevant to the later charge, brought the amnesty into play. In favor of the broadest construction of the immunity act, it is argued that when it was passed there was an imperious popular demand that the inside working of the trusts should be investigated, and that the people and Congress cared so much to secure the necessary evidence that they were willing that some guilty persons should escape, as that reward was necessary to the end. The Government on the other hand maintains that the statute should be limited as nearly as may

be by the boundaries of the constitutional privilege of which it takes the place.

Of course there is a clear distinction between an amnesty and the constitutional protection of a party from being compelled in a criminal case to be a witness against himself. Amendment V. But the obvious purpose of the statute is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime. It should be construed, so far as its words fairly allow the construction, as coterminous with what otherwise would have been the privilege of the person concerned. We believe its policy to be the same as that of the earlier act of February 11, 1893, c. 83, 27 Stat. 443, which read "No person shall be excused from attending and testifying," &c. "But no person shall be prosecuted," &c., as now, thus showing the correlation between constitutional right and immunity by the form. That statute was passed because an earlier one, in the language of a late case, 'was not coextensive with the constitutional privilege.' *American Lithographic Co.* v. *Werckmeister*, 221 U. S. 603, 611. Compare act of February 19, 1903, c. 708, § 3, 32 Stat. 847, 848. To illustrate, we think it plain that merely testifying to his own name, although the fact is relevant to the present indictment as well as to the previous investigation, was not enough to give the petitioner the benefit of the act. See 3 Wigmore, Evidence, § 2261.

There is no need to consider exactly how far the parallelism should be carried. It is to be noticed that the testimony most relied upon was the summary made from the books of the company by its servants, at the petitioner's direction, and simply handed over by him; that apart from the statute the petitioner could not have prevented the production of the books or papers of the company, such as the summary was when made, or refused it if

he had the custody of them, and that the decisions that established the duty to produce go upon the absence of constitutional privilege, not upon the ground of statutory immunity in such a case. *Wilson* v. *United States,* 221 U. S. 361, 377 *et seq. Dreier* v. *United States,* 221 U. S. 394, 400. *Baltimore & Ohio R. R. Co.* v. *Interstate Commerce Commission,* 221 U. S. 612, 623. *Wheeler* v. *United States,* 226 U. S. 478. *Grant* v. *United States, ante,* p. 75. But this consideration does not stand alone, for the evidence given in the former proceeding did not concern the present one and had no such tendency to incriminate the petitioner as to have afforded a ground for refusing to give it, even apart from the statute and the fact that it came from the corporation books. Taking all these considerations together we think it plain that the petitioner could take nothing by his plea.

The evidence did not concern any matter of the present charge. Not only was the general subject of the former investigation wholly different, but the specific things testified to had no connection with the facts now in proof much closer than that they all were dealings of the same sugar company. The frauds on the revenue were accomplished by a secret introduction of springs into some of the scales in such a way as to diminish the apparent weight of some sugar imported from abroad. The table of meltings by the year had no bearing on the frauds, as it was not confined to the sugar fraudulently weighed and it does not appear how the number of pounds was made up. The mere fact that a part of the sugar embraced in the table was the sugar falsely weighed did not make the table evidence concerning the frauds. The same consideration shows that it did not tend to incriminate the witness. It neither led nor could have led to a discovery of his crime. So the admission of his signature to certain checks, although it furnished a possible standard of the petitioner's handwriting if there had

been any dispute about it, which there was not, in the circumstances of this case at least had neither connection nor criminating effect. When the statute speaks of testimony concerning a matter it means concerning it in a substantial way, just as the constitutional protection is confined to real danger and does not extend to remote possibilities out of the ordinary course of law. *Brown* v. *Walker*, 161. U. S. 591, 599, 600. See 5 Wigmore, Evidence, § 2281, p. 238. Other questions would have to be dealt with before the petitioner could prevail upon his plea; but as we consider what we have said sufficient, we shall discuss it at no greater length. There was no dispute as to the facts and a verdict upon it for the Government properly was directed by the court.

The other matters complained of would not have warranted the issue of the writ of certiorari and may be dealt with in few words. The petitioner was denied a separate trial, and this is alleged as error. But it does not appear that the discretion confided to the trial judge was abused. *United States* v. *Ball*, 163 U. S. 662, 672. Again it is said that if the evidence proved the petitioner guilty of a conspiracy it proved him guilty of the substantive offence. It may be that there has been an abuse of indictment for conspiracy, as suggested by Judge Holt in *United States* v. *Kissel*, 173 Fed. Rep. 823, 828, but it hardly is made clear to us that this is an instance. At all events the liability for conspiracy is not taken away by its success—that is, by the accomplishment of the substantive offence at which the conspiracy aims. *Brown* v. *Elliott*, 225 U. S. 392. *Reg.* v. *Button*, 11 Q. B. 929. *Rex* v. *Spragg*, 2 Burr. 993, 999.

An objection is urged to the admission of certain books, called the pink books, in evidence—they being the books in which were entered weights given by one set of weighers—the city weighers—the weighers not having been called. These weights were the higher ones and were introduced as evidence of the discrepancy. They appear

to have been accepted by the company, were checked by the company's tallymen, who testified, and if other evidence than that of the men who made the entries was necessary it was produced. See 2 Wigmore, Evidence, §§ 1521, 1530. Another objection to evidence concerned, the admission of testimony that the same course of conduct was going on long before the date in the indictment when it is alleged that the defendants conspired. The indictment of course charged a conspiracy not barred by the statute of limitations, but it was permissible to prove that the course of fraud was entered on long before and kept up. *Wood* v. *United States*, 16 Pet. 342, 360. *Standard Oil Co.* v. *United States*, 221 U. S. 1, 76. The acts and directions of earlier date tended to show that the same conspiracy was on foot. The petitioner was there. The time of his becoming a party to it was uncertain. The longer it had lasted the greater the probability that he knew of it and that his acts that helped it were done with knowledge of their effect. We think it unnecessary to discuss the suggestion that the evidence did not warrant leaving the case to the jury, or to add further to the discussion that the case received below.

*Judgment affirmed.*