The People of the State of New York, Plaintiff, *v.* Frank Palmisano, Alias Frank Jerome, Defendant.

Magistrates' Court of New York, Borough of Brooklyn, First District, May 29, 1928.

Crimes — conspiracy — indictment for grand larceny does not bar prosecution for conspiracy based on same transaction.

The defendant and two others were charged with conspiring to defraud the complaining witness in the sum of $250. The defendant had been indicted for grand. larceny based on the same transaction. A conspiracy charge is not merged in the charge of grand larceny, but the defendant may be prosecuted for conspiracy, notwithstanding he has been indicted for grand larceny.

Motion to dismiss complaint on conspiracy charge on ground that it was merged in charge of grand larceny.

*Charles J. Dodd,* District Attorney [*Edward D. Kelly,* Assistant District Attorney, of counsel], for the plaintiff.

*William O'Dwyer* for the defendant.

Rudich, J. The defendant, with two others, is charged with the crime of conspiracy in that the three conspired to defraud the complainant of the sum of $250. It is asserted that one of the three conspirators hired an automobile from Hertz Drive-Ur-Self-Stations, a corporation, under an arrangement by which the corporation was to indemnify the operator of the car against claims for damages for injuries sustained by third persons as a result of the use of the car; that a fraudulent claim for damages was reported to the corporation; that thereafter the claim was settled for $250, which was paid to this defendant. After the arrest and before an

examination was had on this charge this defendant was indicted by the grand jury on the charge of grand larceny in that by the same false and fraudulent representations which are set out in the conspiracy charge he stole the same sum of $250 from the same complainant. The defendant now moves before me to dismiss this complaint on the conspiracy charge on the ground that it was merged in the charge of grand larceny.

The leading case in this State on this much debated question is *Lambert* v. *People* (9 Cow. 578) in the Court of Errors in 1827. That was a very close case, the vote being even until the deciding vote was cast by the president of the Senate. Relying upon the Massachusetts case of *Commonwealth* v. *Kingsbury* (5 Mass. 106), decided in 1809, a bare majority of the judges in our Court of Errors held that in the case of an executed conspiracy to commit a felony the conspiracy, a misdemeanor, merges into a felony, so that a prosecution on the latter charge would bar a prosecution on the former.

Since the *Lambert Case* (*supra*) the courts of this State have assumed that to be the law, without further inquiry into the reasons for the rule, and without reference to the subsequent fate of that doctrine in Massachusetts or in any other jurisdiction. Only very few cases in this State have touched upon this topic at all, and in most of these the expressions of opinion may be disregarded as *obiter dicta*.

However, in two of the cases reported in this State since the *Lambert* case the question came up squarely before the court for decision. The first of these is *People* v. *Mc Kane* (7 Misc. 478), decided by the Court of Oyer and Terminer in Kings county in 1894, and the second is *People* v. *Thorn* (21 Misc. 130), decided by the Court of General Sessions in New York county in 1897. Each of these decisions was rendered by a court of original jurisdiction, no appeal having been taken in either case. Some of the digests have it that the decision of the Court of Oyer and Terminer in the *Mc Kane* case was affirmed by the Court of Appeals in 143 New York, 455. Such is not the fact, however, as may be ascertained by a closer study of the successive steps in that famous case. The courts in both of these cases, though recognizing a well-defined trend away from the doctrine of merger, felt themselves bound by the rule of *stare decisis* to follow the *Lambert* case.

An examination into how other jurisdictions have dealt with this question discloses that New York stands with a small minority in its viewpoint. In England, where the administration of the criminal law has achieved results that have long been the envy of our American States, the theory of merger has been discarded. (*Regina*

v. *Button*, 11 Q. B. 929.) In Massachusetts the *Kingsbury Case* (*supra*), which served as the prop upon which our leading case of *Lambert* v. *People* rested, was repudiated in the case of *Commonwealth* v. *Walker* (108 Mass. 309). In our Federal courts we find a long line of cases, down to the comparatively recent one of *Heike* v. *United States* (227 U. S. 131), all holding that there is no merger of the two crimes. In Illinois (*People* v. *Susmarski*, 210 Ill. App. 233; *People* v. *Robertson*, Id. 234; 284 Ill. 620), in Pennsylvania (*Commonwealth* v. *Corcoran*, 78 Penn. Super. 430), in Connecticut (*State* v. *Setter*, 57 Conn. 461), and in many other States, whose highest courts have always been respected and quoted in the opinions of our Court of Appeals, we find a definite and distinct trend of thought at variance with the rule laid down in the *Lambert* case and since followed by some of our minor courts.

The leading text writers, too, are opposed to the theory of merger. Bishop's Criminal Law (Vol. 1 [9th ed.], § 815) says: " The general principle, both of natural justice and of law, permits the prosecuting power to bring an offender to trial for so much of his offence as it pleases. If its pleasure is to overlook a felony, even though it was the instrument by which a misdemeanor was accomplished, the clemency, according to the ordinary course of legal things, also according to the dictates of mere uneducated reason, is not a wrong to its recipient whereof he can complain."

In Wharton on Criminal Law (Vol. 2 [11th ed.], § 1609) we find a clear expression on the subject indicating that the weight of authority as well as sound reasoning, is against the rule laid down in the *Lambert* case. That learned author there says: " The technical rule of the old common-law pleaders, that a misdemeanor always sinks in the felony when the two meet, has in some instances been recognized in this country, though without good reason. In England, as has been already noticed, the inconvenience of the principle, as well as its absurdity, has attracted grave judicial scrutiny, and eminent judges have declared they felt no disposition to extend a rule by which a man, when indicted for a misdemeanor, may be acquitted because it is doubtful whether the offense is not a felony, and who, when indicted for the felony, may be acquitted because it is doubtful whether the offense is not a misdemeanor. This has led, if not to a repudiation of the doctrine, at least to its restriction within narrow limits."

To summarize, we have this situation with respect to the law on the subject: The *Lambert* case, decided by our highest court more than 100 years ago by a bare majority, was based upon the Massachusetts case of *Commonwealth* v. *Kingsbury*, which has since been repudiated in its own State; that aside from the *Lambert*

case and disregarding *obiter dicta* in a few other cases we have only two flat decisions on this subject in this State within the past 100 years, each of them by a court of original jurisdiction; that since the latter of these two cases, which was decided in 1897, the courts of this State have had no occasion to express themselves on the point at issue. As against that we have by far the greater number of our American States, as well as the English courts and the United States Supreme Court, on the other side of the question, and ranged with these the more noted text writers.

Under these circumstances I feel myself free to study this question as a new one in this State, unfettered by any precedent. Looking for guidance in all of the many conflicting opinions written on the subject, I find that the logic and forcefulness of the reasoning in those holding against the doctrine of merger appeal to me more strongly than the arbitrary ruling laid down in the *Lambert* case, which was followed in the *McKane* case and in the *Thorn* case. I am fortified in that position also by giving heed to the well-recognized drift in more recent years towards closing all possible loopholes of escape to criminals. The Baumes Laws, recently enacted by our Legislature, the similar stringent laws that have been placed and are now being placed on the statute books of the more progressive of our sister States, the public expressions and writings by Chief Justice TAFT and other learned jurists and publicists who recognize that under our present state of the criminal law the guilty too often escape punishment — all these furnish additional reasons why this technical obstacle to the successive prosecution of the criminal should be disregarded.

Courts should be reluctant to split hairs in favor of those charged with serious crimes. The last few years have shown some progress in the direction of safeguarding the people from its avowed enemies, and since the Legislatures have not been slow to respond to this movement, the courts likewise should not be found lagging in the rear of this march of progress; they should not regard themselves hidebound by precedents not based on sound reasoning, but which were so decided because of earlier cases that have since been repudiated. If this defendant should be twice convicted — once on the charge of conspiracy and again on the charge of grand larceny — the judges who impose sentence may be safely trusted to see to it that his punishment in the one case is taken into account when sentence is imposed in the other.

Counsel for the defendant urges the rule of *stare decisis*. One can readily understand why, in the law of property for instance, the rule of *stare decisis* should be held sacred. Men make contracts, draw wills, mortgage lands, all having in mind definite principles of

law, and rules of construction now hoary with age, which arbitrary though they may be, have stood as guideposts for centuries and have become so thoroughly fixed in our common law and so well known that the average person in his daily transactions with other men steers his course accordingly.   Landmarks like these cannot be shifted overnight without causing serious confusion in our business relationships, and for that reason logic has sometimes been sacrificed for the sake of certainty and stability.   These considerations, however, have no weight in the law of crimes.   Men do not violate the Penal Law because they have in mind some long-standing but arbitrary refinements of construction that have but little sound reasoning behind them and which are found in out-of-the-way opinions known only to the student of law.   Where constitutional or fundamental rights are not threatened the courts are under no obligation to those accused of crime to cling to outworn technicalities and fine-spun theories which have long since been abandoned by those very tribunals that once proclaimed them.

For these reasons I hold that there has been no merger of the conspiracy charge into that of grand larceny.   The motion to dismiss this complaint is, therefore, denied.