In re WEISMAN.

District Court, S. D. New York.

Feb. 1, 1940.

John T. Cahill, U. S. Atty., of New York City (Walter R. Mansfield, Asst. U. S. Atty., of New York City, of counsel), for the government.

George Wolf, of New York City, for witness.

ABRUZZO, District Judge.

This witness was subpoenaed to appear before the grand jury. He was asked questions as to whether or not he knew any persons who visited or lived in Shanghai, China, from 1934 to 1939. He refused to answer, claiming his constitutional privilege that such answer might tend to incriminate him. He was also asked whether or not he received any cables at Murray's Restaurant, New York City. He again re-

fused to answer, claiming his constitutional privilege.

He was directed to answer these questions by this Court but he still refused to answer on the ground that the answers might tend to incriminate him. The witness was asked whether he wished to submit proof to the Court in support of his contention that his answers might tend to incriminate him and having answered in the affirmative, through his attorney, a date was set and a hearing accordingly had.

At this hearing, the witness testified that he felt that his answers would incriminate him and therefore his refusal to answer the questions was in good faith. In support of his position, he testified that the Assistant United States Attorney told him before he was brought before the grand jury that it was his belief that he (the witness) could give a great deal of information about certain persons and if he would do so the government would be lenient with him but he could not go "scot free".

This conversation was denied by the Assistant United States Attorney.

The witness told of reading in a gossip column of a large newspaper that the owner of a large advertising agency and partner of a gangster was to be indicted. He was the head of an advertising agency. However, he had never been the partner of a gangster although it had been rumored that he had been. He, therefore, believed that the item identified him. He further refused to answer because he was acquainted with certain facts that convinced him he would be incriminated if he were compelled to answer.

No testimony was adduced as to what these particular facts were. He believed that the questions concerning the cablegrams were asked of him in relation to the violation of the customs and narcotic laws of the United States. The witness evidently knew the Assistant United States Attorney had some cablegrams. They were produced in Court but the cables were addressed to persons other than the witness and they did not contain any reference to the smuggling of narcotics or other contraband.

The questions asked of the witness which he refused to answer were not in relation to these particular cablegrams. They related to whether or not the witness received any cables at Murray's restaurant, New York City.

Assistant United States Attorney, Walter R. Mansfield, Jr., testified clearly that he considered William Weisman a witness and not a defendant in the proceeding.

There is some evidence that this witness' refusal to answer the questions is not in good faith. He was asked several times whether or not he knew anyone who visited or stayed in Shanghai, China, from the year 1934 to 1939 inclusive. He refused to answer this question on any of these occasions but at one time, under oath, he stated that he did not know anyone who lived or stayed in Shanghai, China, in 1939. He explained this inconsistency by stating that he did not intend to answer that question, having made a mistake when he did so. The answer indicates clearly that the question could not incriminate him, nevertheless he claimed his constitutional rights.

It is the established law that to justify silence under the claim of constitutional privilege, it must appear that the answer which might be given would tend to incriminate. United States v. Flegenheimer, 2 Cir., 82 F.2d 751.

In Abrams v. United States, 2 Cir., 64 F.2d 22, this doctrine is reiterated as well as in United States v. Weinberg, 2 Cir., 65 F.2d 394.

Constitutional protection is confined to real danger and does not extend to remote possibilities. Heike v. United States, 227 U.S. 131, 144, 33 S.Ct. 226, 57 L.Ed. 450, Ann.Cas.1914C, 128.

Whether or not the witness has the burden of showing that his answer would tend to incriminate him does not seem to be of moment in the present case.

In United States v. Abner Zwillman, 108 F.2d 802, United States Circuit Court of Appeals for the Second Circuit, decided January 15, 1940, the Court held that the witness is entitled to a hearing before the Court at which time he should be permitted to produce evidence in support of his claim that the answers might tend to incriminate him. From a study of the Zwillman case, it seems that the Court intended to place the burden of proof on the witness because the opinion states as follows: "It may be argued that defendant has not sustained the burden of proof because he never took the stand or called

the court stenographer to show that there was proof before the grand jury that he was engaged in unlawful liquor operations * * * ."

The procedure as laid down in the opinion of the Zwillman case was strictly followed here.

The attorney for the witness claims that if the facts sought to be elicited are but one link in a chain of many circumstances of incrimination, the claim of constitutional privilege should be respected. It is not necessary that a single fact alone be sufficient to convict him. In support of this contention, the case of United States v. Aaron Burr, Fed.Cas. No. 14,692e, is cited.

However, the opinion does not lay down the principle as broadly as the attorney for the witness has indicated. In part it states: "The gentlemen of the bar will understand the rule laid down by the court to be this: It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness."

The Court does not believe that the witness' answers to the questions propounded will tend to incriminate him, nor has there been one scintilla of evidence produced to that effect.

The law cannot permit nor did it ever intend to make the witness to be the sole and only judge of whether or not his answers would incriminate him. The rule to be followed seems to be well expressed in United States v. Weinberg, United States v. Flegenheimer, and Heike v. United States, supra.

The conduct of the witness is contumacious. He is, therefore, sentenced to a term of six months' imprisonment for contempt.