## UNITED STATES v. BARSKY et al.

### No. 368–47.

District Court of the United States for the District of Columbia.

June 19, 1947.

166

See also 72 F.Supp. 58.

George Morris Fay, U. S. Atty., and Charles B. Murray and John Burke, Asst. U. S. Attys. for District of Columbia, all of Washington, D. C., for the United States.

O. John Rogge, of Washington, D. C., and Benedict Wolf, of New York City, for defendants.

KEECH, Associate Justice.

Two objections were interposed by counsel for the defendants to the admission in evidence of certain exhibits offered by the Government covering hearings before the Committee on Un-American Activities of the House of Representatives: (1) that proper foundation has not been laid as to the accuracy and proof of the records; and (2) that 28 U.S.C.A. § 634 prohibits the admission in evidence of the exhibits in question.

As to the first objection, the Court holds that the Government has laid an adequate fundation so far as the accuracy of the exhibits is concerned. This objection is therefore overruled.

■ A more difficult question is posed by the second objection. The Court has listened with interest to the lengthy arguments of counsel for the defendants and for the Government. Many authorities have been cited by each side, but there has been limited judicial determination with reference to the specific section under consideration. It is therefore incumbent upon the Court to view § 634 in the light of its legislative history, the purposes of the whole statute of which it is a part, and judicial interpretations of similar immunity provisions.

As disclosed by the record, the original statute relating to the matter of testimony before Congressional committees, the right to compel testimony, and the immunity from self-incrimination granted to persons so compelled to testify, has passed through several stages. Congress first dealt with the subject in 1857, 11 Stat. 155, 156, amending the act in 1862, 12 Stat. 333, and again in 1938, 52 Stat. 942, 943.

The history shows that this legislation stemmed from the need of the Congress not only to obtain voluntary testimony, but to be enabled to compel the attendance of witnesses, the giving of testimony, and the production of documents pertinent to matters under inquiry, without infringement upon the Constitutional prohibition against requiring a witness to incriminate himself.

To provide the necessary authority, the Congress enacted the Act of January 24, 1857, "more effectually to enforce the Attendance of Witnesses on the Summons of either House of Congress, and to compel them to discover Testimony." The provision of that Act dealing with the protection of a witness from prosecution was apparently added as a precautionary safeguard, specifically immunizing witnesses from criminal prosecution based upon facts which they might be compelled to disclose, as an offset to the denial of their right to refuse to give self-incriminating testimony. As shown by the debate on the 1862 amendment, the 1857 statute granted immunity in such broad terms that persons who had committed grave crimes against the government welcomed the opportunity to appear before an investigating committee and make general disclosures, thereby immunizing themselves against future criminal prosecu-

tion. See the debate on H.R. 219, 37th Congress, 2nd Session, Globe, pp. 428-431. Congress apparently intended the 1862 act to close this loophole and to amend the immunity provision to prohibit only forced self-incrimination.

■ Section 634 of Title 28 is but a part of the Act of June 22, 1938, which reenacted in different form, but with slight change, the previous acts, and amended the statute to extend to joint committees the same power possessed by committees of either House. To arrive at the true legislative intent, it is therefore necessary to view the act as a whole.

■ The basic purpose of the statute is to require attendance of witnesses, their full response to questions, and the production of records. Sec. 101, R.S., 2 U.S.C.A. § 191, provides that the President of the Senate, the Speaker of the House, or the chairman of a congressional committee, may administer oaths to witnesses in any case under their examination. Sec. 102, R.S., 2 U.S.C.A. § 192, provides that a witness shall not refuse to appear to testify or to produce papers, or, having appeared, refuse to testify, under penalty of certain punishment. Sec. 103, R.S., 2 U.S.C.A. § 193, provides that no witness is privileged to refuse to testify to any fact or to produce any paper on the ground of self-incrimination. Sec. 104, R.S., 2 U.S.C.A. § 194, provides the method of certifying to the courts prosecutions for failure to comply with Sec. 102. Further, in order to effectuate the full disclosure required by the preceding sections, Sec. 859, R.S., 28 U.S.C.A. § 634, provides that no testimony received shall be used as evidence in any criminal proceeding, except in prosecutions for perjury committed in giving such testimony.

■ The various steps in the legislative history inescapably lead to the conclusion that it was the intent of Congress not to take from any witness his constitutional right, specifically, the immunity from self-incrimination prescribed by the Fifth Amendment. On the other hand, it was just as clearly the intent of Congress to prevent a witness from failing to attend in disobedience of a subpoena or failing to produce records required by subpoena, or, appearing,

refusing to answer questions put, and to punish such contempt.

The issue here raised is whether the purpose of the entire statute would be, or is intended to be, frustrated by construing the immunity granted by § 634 to embrace contempt proceedings, or proceedings growing out of contempt, for violation of the provisions of § 192.

Significant is the statement found in the Senate report at the time of the enactment of the 1938 act, Senate Report No. 2108, 75th Congress, that the committee had added "the restrictive section 859 of the present statute so that a person could not have testimony he is required to give without privilege of the rule against self-incrimination used as evidence against him in a criminal proceeding."

The Supreme Court has recognized the right of a court in interpreting a statute, even though it be unambiguous in its terms, to so construe any section thereof so as not to defeat the true purpose of the enactment as a whole. In Glickstein v. United States, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128, the Court construed a broad immunity clause (containing no exceptions) not to include a prosecution for perjury of a witness in testifying in a bankruptcy examination. The Supreme Court there stated (222 U.S. at page 143, 32 S.Ct. at page 73, 56 L.Ed. 128), in discussing the defendant's claim of immunity:

"* * * to state the proposition in another form, it is that as the statute in the immunity clause says, 'But no testimony given by him (the witness who is compelled to be examined) shall be offered in evidence against him in any criminal proceeding,' and as these words are unambiguous, there is no room for limiting the language so at to cause the immunity provision not to prohibit the offer of the testimony in a criminal prosecution for perjury. * * * the statute expressly commands the giving of testimony, and its manifest purpose is to secure truthful testimony, while the limited and exclusive meaning which the contention attributes to the immunity clause would cause the section to be a mere license to commit perjury, and hence not to command the giving of testimony in the true sense of the word.

"* * * it is impossible in reason to conceive that Congress commanded the giving of testimony, and at the same time intended that false testimony might be given with impunity, in the absence of the most express and specific command to that effect."

The Court cited with approval the opinion in Edelstein v. United States, 8 Cir., 149 F. 636, 643, 9 L.R.A.,N.S., 236, which also involved construction of the immunity clause in the Bankruptcy Act. 11 U.S.C.A. § 25. In rejecting Edelstein's contention that this clause extended to immunity from prosecution for a false statement made at his examination, the Court said:

"* * * The immunity was made conditional upon his giving testimony upon subjects out of which prosecutions against him might flow. A most natural and reasonable inference, therefore, is that Congress intended the immunity to relate to the use of his evidence in such criminal prosecutions only.

* * * * * *

"It would seem that the statute in question was not intended to confer a broader immunity, so far as it was applicable, than the constitutional provision does in its scope of operation. To hold that the statute protects a bankrupt from the use of his evidence in a prosecution for perjury while actually testifying would defeat the obvious purposes of the act. * * * Moreover, it would, in effect, secure to the bankrupt the immunity in question for violating his part of the compact, namely, to testify—that is, to testify truthfully—by virtue of which he secured a right to the immunity. We are not willing to impute to Congress any such contradictory and absurd purpose. The words 'any criminal proceeding' cannot sensibly or reasonably be construed so literally and generally as to include the criminal proceeding provided by law for false swearing in giving his testimony. * * *"

It is the opinion of this Court that the same reasoning which brought the court to conclude in the foregoing cases that prosecution for the crime of perjury could be read as an exception to a similar statute conferring immunity from use of testimony in "any criminal proceeding", is equally ap-

plicable in reaching the conclusion that prosecution for contempt and actions leading up to contempt must be excluded from "any criminal proceeding" as used in § 634. To hold otherwise would be to subvert the intent manifested in the preceding sections of the same enactment.

The fact that § 634 contains the one exception, prosecution for perjury, in no wise affects the analogy between the instant case and the cases cited above, for in the Glickstein case, supra, it was stated: "Bearing in mind the subject dealt with, we think the reservation of the right to prosecute for perjury, made in the statutes to which we have referred, was but the manifestation of abundant caution; * * *." And in Heike v. United States, 227 U.S. 131, 33 S. Ct. 226, 227, 57 L.Ed. 450, Ann.Cas.1914C, 128: "* * * This last proviso was added only from superfluous caution and throws no light on the construction."

█ By this very exception, § 634 shows that it is not intended that all testimony, of whatever character, shall not be used in any criminal proceeding, but rather that it shall not be used in prosecutions for crimes distinct and apart from those of a contemptuous character. The criminal proceedings which § 634 contemplates are those for crimes which occurred prior to the action of the committee in subpoenaing the witness to appear and to which the witness was compelled to testify. As distinguished from criminal proceedings for such separate crimes, it would seem, in a sense, that a prosecution for contempt is but the continuation of the proceeding before the committee, the statements made and events transpiring at the hearing being inseparable from the prosecution for contempt. A prosecution for perjured testimony before the committee is of the same continuing character and is, in terms, excluded from the operation of the immunity provision. Evasive tactics constitute a parallel frustration of the purpose of the Congress to obtain full disclosure of all facts pertinent to a legislative inquiry.

This is not a case of using responsive testimony, received during an inquiry and pertinent to the purpose for which the committee was established, in proving a disrelated offense which occurred theretofore. The criminal offenses here under consideration are the direct outgrowth of actions or lack of action under the specific act of which § 634 is an integral part, and occurred at the hearing.

While not controlling in the legal determination of the question put, it is nevertheless significant that the Government in this particular case has stated that, as of the time of argument of the motion, without the aid of the evidence in question it would not be able to prove its case. This demonstrates as a practical matter that the legislative effort and purpose would be defeated by a literal construction of § 634.

█ In United States v. Kirby, 74 U.S. 482, 486, 7 Wall. 482, 486, 19 L.Ed. 278, the Supreme Court clearly stated an elementary principle of statutory construction: "* * * All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter."

Sutherland's Statutory Construction, in its discussion of the limitation on literal interpretation, states (§ 4706):

"The literal interpretation of words of an act should not prevail if it creates a result contrary to the apparent intention of the legislature and if the words are sufficiently flexible to admit of a construction which will effectuate the legislative intention. The intention prevails over the letter, and the letter must if possible be read so as to conform to the spirit of the act. * * * Thus words or clauses may be enlarged or restricted to harmonize with other provisions of an act. The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense were they intended to be used in the act. * * *"

█ Are we to hold that, although Congress has given the committees the right to compel full disclosure of matters pertinent

to a legislative inquiry, prescribed penalties for failure of a witness to comply, and provided the method by which prosecutions for contempt shall be instituted in the courts, it has, by another section of the same enactment, deprived the Government of the very evidence by which it may attempt to prove a concerted effort to frustrate the basic intent of the legislation? Patently, this is a construction which leads to an absurdity. The law does not require that such interpretation be placed on the statute, but, on the contrary, that the statute be so read as to give life to it in its entirety. This can here be done without encroachment upon any right vested in the individual by the Constitution.

The Court therefore holds that 28 U.S.C.A. § 634 was not intended to, and does not, bar the use of all testimony taken at a Congressional hearing in a prosecution for contempt or conspiracy leading to contempt. Defendants' second objection is overruled.