**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph S. KLEHMAN, Defendant-Appellant.**

**Nos. 16281, 16282.**

United States Court of Appeals Seventh Circuit.

July 3, 1968.

Before SCHNACKENBERG, KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Appellant here is Joseph S. Klehman, president of Wilmington Chemical Corporation. An information charged that the corporation and Klehman violated the Federal Hazardous Substances Labeling Act.[1] Each of ten counts alleged an interstate shipment of X–33 Water Repellent, allegedly hazardous, extremely flammable, and in a package which was misbranded in that the label did not contain warnings and precautionary instructions.

Klehman claimed immunity from prosecution by virtue of testimony he had given, under subpoena, before the Federal Trade Commission.

Klehman's motions were denied.[2]

The corporation then entered a plea of guilty. Klehman entered a plea of nolo contendere, upon condition that he have the opportunity to raise his claim of immunity upon appeal. The district court accepted the plea upon that condition, and judgment was entered and fine imposed. Klehman appealed.

The proceeding before the Federal Trade Commission was brought pursuant to 15 U.S.C. sec. 45(b). The complaint named both the corporation and Klehman and alleged that in connection with marketing of X–33, they engaged in unfair methods of competition and unfair and deceptive acts and practices in commerce, mainly false and deceptive assertions as to the merits of X–33. 15 U.S.C. sec. 49 confers subpoena power on the commission, provides that no person shall be excused from testifying on the ground of self-incrimination, and that "no natural person shall be prosecuted * * * for or on account of any transaction, mat-

James T. Griffin, William T. Kirby, Chicago, Ill., for defendant-appellant.

Roger J. Balla, Thomas A. Foran, U. S. Atty., Chicago, Ill., for plaintiff-appellee.

1. 15 U.S.C. § 1261 et seq., retitled the Federal Hazardous Substances Act, 80 Stat. 1305 (1966).

2. His first motion (to dismiss, based on 15 U.S.C. sec. 32) was denied because his assertions were "unsupported". United States v. Wilmington Chemical Corp. (N.D.Ill.1966), 254 F.Supp. 92. His second motion (to dismiss, based on 15 U.S.C. sec. 49) was denied on the ground there was no substantial relationship between his F.T.C. testimony and the subject matter of the information. His motion to arrest judgment was based on both statutes. We find it unnecessary to decide whether 15 U.S.C. sec. 32 is applicable.

ter, or thing concerning which he may testify * * * before the commission in obedience to a subpoena issued by it * * *."

This is the type of immunity statute which does not require the witness, in order to gain immunity, to claim his privilege before being required to answer.[3]

The question presented here is whether the testimony given by Klehman before the Federal Trade Commission "would furnish a link in the chain of evidence needed to prosecute," and whether Klehman had "reasonable cause to apprehend danger from a direct answer." [4]

Assuming that the government could establish that unlawful shipments were made on behalf of the corporation, it would be necessary, in order to convict Klehman, to produce proof that he had "a responsible share in the furtherance of the transaction." [5] Evidence tending to show that during the period these shipments were made he exercised close control of all details of the corporate activity would be a substantial link in the chain of evidence.

A portion of Klehman's testimony before the Federal Trade Commission (all in response to questions by the commission's attorney) may be summarized as follows:

Klehman was president of the corporation. He owned all the stock. The only other director he could recall was his personal secretary, who was also secretary of the corporation. Directors' meetings were held when necessary to fulfill formal requirements. The maximum number of employees was 25. There were five or six at the time of the first shipment of X–33 on April 9, 1962. Klehman hired them. He had actual control of the company and the employees did only what they were told. He formulated the policy. He personally supervised the advertising material used to promote X–33.

It is true that the F.T.C. proceeding was directed against making deceptive claims of the merits of X–33 while the offense now charged was the failure to warn of its dangers. The administrative proceeding and the criminal prosecution were, however, closely related in a number of particulars.

Both involved the marketing of X–33. The F.T.C. proceeding included the same period of time. The complaint was issued October 28, 1964, and alleged the marketing of X–33 from some date after September 23, 1961 to the date of the complaint. The shipments charged in the information occurred from April 7, 1962 to June 19, 1962. The complaint named both Klehman and the corporation (as did the information) and alleged, presumably as the basis for naming Klehman individually, "He formulates, directs and controls the acts and practices of the corporation respondent, * * *." This proposition was probably the basis for charging Klehman with responsibility for shipments made on behalf of the corporation.

Although Klehman testified in March, 1965, and the information was not filed until September 17, 1965, he had previously received notice suggesting that a claim would be made that he violated the Federal Hazardous Substances Labeling Act.

On June 20, 1963, the Department of Health, Education, and Welfare had sent a notice of hearing to the corporation and Klehman. It informed them of an investigation indicating they were responsible for violation of the Federal Hazardous Substances Labeling Act. It referred to insufficient warnings on labels of 16 shipments of X–33 during the period from April 9 to June 27, 1962, three of them being shipments eventually charged in the information. The notice indicated the department was about to decide whether to refer the matter to

---

3. United States v. Monia (1943), 317 U.S. 424, 430, 63 S.Ct. 409, 87 L.Ed. 376, 381.

4. Hoffman v. United States (1950), 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118, 1124.

5. United States v. Dotterweich (1943), 320 U.S. 277, 284, 64 S.Ct. 134, 88 L.Ed. 48, 53.

the Department of Justice for prosecution.

At the time Klehman testified under F.T.C. subpoena there appears to have been a real possibility that he would be prosecuted individually for the corporation's unlawful shipments of X–33 as a misbranded product. The issue, in the administrative proceeding, of individual responsibility for corporate acts was seemingly identical to an issue inherent in the criminal prosecution, if brought. We think that, but for the immunity statute, Klehman would clearly have been privileged to refuse to answer the questions concerning his close control over the activity of the corporation. It follows that when he testified, the statute immunized him from this prosecution.

The government relies on Heike v. United States.[6] In that case an officer of a sugar refining company had testified in a grand jury investigation into violation of the antitrust laws. He later claimed immunity when prosecuted for frauds on the revenue by understating in records the weight of raw sugar processed. In his grand jury testimony he had presented a summary showing the number of pounds of raw sugar processed each year. Apparently the relationship between the two sets of figures was such that the grand jury testimony, though dealing with the same company and product, was not probative of the fraud. In rejecting the claim of immunity, the Supreme Court said, "When the statute speaks of testimony concerning a matter it means concerning it in a substantial way, just as the constitutional protection is confined to real danger, and does not extend to remote possibilities out of the ordinary course of law." [7]

We think the danger to Klehman when he testified was real and not remote, and that his testimony about his responsibility for the acts of the corporation in promoting X–33 concerned in a substantial way his responsibility for the acts

of the corporation, in making unlawful shipments of it.[8]

Other areas of Klehman's testimony on which he relies need not be considered.

This case illustrates one of the dangers to the public interest in this type of immunity statute, i. e., the likelihood that counsel for a government agency may unwittingly and unnecessarily confer immunity from prosecution. Where an immunity statute requires a claim of privilege and immunity is conferred only where government counsel insists nevertheless upon an answer, the possibility of claiming immunity as an afterthought is foreclosed, and it is made certain that government counsel will not confer immunity without specific notice and an opportunity to consider whether the hoped for testimony is worth the price.[9]

The judgment against Klehman is reversed and the cause remanded with directions to dismiss the information as to him.

6. (1913), 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450.

7. Id. at page 144, 33 S.Ct. at page 228.

8. See United States v. Molasky (7th Cir. 1941), 118 F.2d 128, 135.

9. See United States v. Monia, supra, 317 U.S. at page 427, 63 S.Ct. 409.