## UNITED STATES v. ARMOUR & CO. et al.
### No. 13389.

District Court, E. D. Pennsylvania.
Jan. 21, 1946.

Gerald A. Gleeson, U. S. Atty., and Joseph E. Gold, Asst. U. S. Atty., both of Philadephia, Pa., for the Government.

Thomas D. McBride, of Philadelphia, Pa., for defendants Clarence J. Sharpless, Edward H. Wolfe, and Thomas J. Reilly.

Maurice Stern, of Philadelphia, Pa., for defendants Morris Needles, Daniel Bassett, Joseph Mahon, Lester Macht, Charles Gable, Harold Goodman, James Brown, Jack Jenkins, and Frederick C. Gebicke.

KENNEDY, District Judge (Assigned).

The above case is before the Court at the present time on special pleas in bar interposed by the several defendants named above. The instant controversy grows out of the following facts:

On May 15, 1945, the above named defendants, in response to a subpoena, appeared before an official of the Office of Price Administration accompanied by their counsel. Before the defendants were called upon to give evidence under oath at said hearing, the representative of the Office of Price Administration who was conducting the investigation was advised that said defendants claimed their right of immunity under the law and that such right of immunity would not be waived in connection with their testimony, to which the official in charge of the investigation replied that no immunity would be granted to any of the witnesses who had been subpoenaed and sworn in.

Thereafter the said defendants gave sworn testimony in response to questions propounded by the official in charge. It has been stipulated that all of the defendants as witnesses gave substantially the same testimony and that for the purposes of this hearing the testimony of the defendant and witness Harold Goodman may be accepted and adopted by the Court as a basis for a consideration and decision of the case of each defendant now before the Court. Without setting forth this testimony verbatim, it appears that in substance the defendant as a witness was asked if he knew the regulations pertaining to tie-in sales, to which his reply was in the affirmative. He was asked if at any time he had received any orders such as in order for a customer to buy one particular item that he had to purchase another particular item, to which the response of the defendant was that he had received no orders from anybody and that he had acted solely upon his volition. The witness in response to a question testified that he had never received any instructions as to tie-in sales at any meetings of salesmen of the defendant corporation nor had he received any letters of instruction from its Chicago office. In response to a question, the defendant as a witness testified that there were signs posted through the branch offices that there should be no tie-in sales by company policy. In response to a question, the defendant and witness testified that he had not violated any O.P.A. Regulations and that he had never told customers that in order to get a certain item such as poultry that they would have to take eggs.

Thereafter and under an indictment filed in this Court on September 6, 1945, the defendant Armour & Company and the individual defendants here represented, together with others, were charged with a conspiracy to violate the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq., and certain revised maximum price regulations thereunder. The indictment, by its terms, describes the defendant corporation and identifies the individual defendants by name and residence as salesmen or sales managers of the defendant corporation. Then follows a description of the regulations invoked and an allegation that the defendants did knowingly, wilfully, corruptly and feloniously conspire, combine, confederate and agree together

and with each other to commit offenses against the United States by causing to be made sales, deliveries, transfers and shipments of commodities in violation of the regulations, which sales were in violation of such regulations and in evasion of and higher than the maximum price permitted— "in that the defendants, well knowing that such sales by them were for the purpose of resale by said purchasers in the course of business, by tying agreement offered, solicited, demanded, required and compelled said purchasers to purchase other commodities as a condition to the sale and delivery of the food products hereinabove set forth." Then follows in the indictment the setting out of certain overt acts by which each individual defendant at a certain time and place and to certain customers is alleged to have made specific tie-in sales.

The question for decision by the Court here is as to whether or not, under the facts and the law applicable, the defendants by being witnesses, compelled to testify under subpoena, are entitled to immunity against prosecution under the present indictment. The facts are not in dispute and the solution of the problem depends upon the reasonable inferences to be drawn from the facts and the law covering the situation thereby disclosed. It can scarcely be in dispute that the defendants are charged with a conspiracy to violate the Emergency Price Control Act and the regulations thereunder, by the indulgence of tie-in sales which in simple language means to compel a customer to purchase a certain commodity as a condition to being furnished with the principal commodity desired by the customer. What has been outlined in connection with the testimony solicited from the defendants at the prior investigation reflects beyond peradventure that the witnesses were interrogated by the examiner as to their knowledge of tie-in sales; as to whether or not they had received orders to indulge in such sales by their employer; as to whether or not they had been given instructions in regard to such sales; and as to whether or not they had indulged in any such sales. Such testimony so given upon subpoena and under oath therefore seems to go to the very heart and substance of the matters charged in the indictment as being carried out through a conspiracy and unless the defendants have forfeited their right to immunity by reason of the fact that they specifically denied that they received orders to carry on these transactions or did in fact carry them on, that they should be entitled to the immunity sought.

By specific provision of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 922(g), it is provided that no person shall be excused from complying with any requirements under this Section because of his privilege against self-incrimination, but the immunity provisions of the Compulsory Testimony Act of February 11, 1893, U.S. C.A. Title 49, Section 46, shall apply with respect to any individual who specifically claims such privilege. 49 U.S.C.A. § 46, so far as pertinent here, reads as follows:

"No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements, and documents before the Interstate Commerce Commission, or in obedience to the subpoena of the commission, whether such subpoena be signed or issued by one or more commissioner, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of the preceding chapter on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said commission, or in obedience to its subpoena, or the subpoena of either of them, or in any such case or proceeding: Provided, That no person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying."

In the first place, it can scarcely be asserted in this case that the defendants did not specifically claim their privilege of immunity. They were represented by counsel who particularly set out the objection of the defendants and the fact that they in no respect waived their right of immunity by submitting themselves as witnesses under the compulsion of a subpoena. Therefore, whatever may be the law in cases where the privilege is not particularly claimed, the point is not sufficiently in dispute in this hearing to give it further consideration.

It is undoubtedly the rule, as laid down by the Courts, that the testimony sought must be something of a substantial nature so as to suggest real danger. As some

Courts have expressed it, the mere giving of one's name or residence would not invade his legal rights as distinguished from testimony which would go to the substance of a prosecution against him.

██ Many cases have arisen in the Courts where different phases of the applicability of the law have been discussed but running through them all seems to be a common thread which connects them into a general rule. In Heike v. United States, 227 U.S. 131, at page 144, 33 S.Ct. 226, at page 228, 57 L.Ed. 450, Ann.Cas. 1914C, 128, the opinion speaks of this phase of the subject in the following language:

"When the statute speaks of testimony concerning a matter it means concerning it in a substantial way, just as the constitutional protection is confined to real danger, and does not extend to remote possibilities out of the ordinary course of the law."

In Doyle v. Hofstader, 257 N.Y. 244, 177 N.E. 489, 87 A.L.R. 418, Judge Cardozo of the New York Court of Appeals, afterward a United States Supreme Court Justice, expresses the thought at page 493 of 177 N.E. in the following language:

"A witness is not required to show, in order to make his privilege available, that the testimony which he declines to give is certain to subject him to prosecution, or that it will prove the whole crime, unaided by testimony from others. It is enough, to wake the privilege into life, that there is a reasonable possibility of prosecution, and that the testimony, though falling short of proving the crime in its entirety, will prove some part or feature of it, will tend to a conviction when combined with proof of other circumstances which others may supply."

The original guiding star for the Courts on this question appears to be the case of Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, and it has likewise been touched upon in Heike v. United States, supra, but a more recent pronouncement by the High Court upon the subject is found in United States v. Monia, 317 U.S. 424, at page 430, 63 S.Ct. 409, at page 412, 87 L.Ed. 376, where Mr. Justice Roberts, in speaking for the Court, lays down the following rule:

"The legislation involved in the instant case is plain in its terms and, on its face, means to the laymen that if he is subpoenaed, and sworn, and testifies, he is to have immunity. Instead of being a trap for the Government, as was the original Act, the statutes in question, if interpreted as the Government now desires, may well be a trap for the witness. Congress evidently intended to afford Government officials the choice of subpoenaing a witness and putting him under oath, with the knowledge that he would have complete immunity from prosecution respecting any matter *substantially connected with the transactions in respect of which he testified,* or retaining the right to prosecute by foregoing the opportunity to examine him."

Mr. Justice Pine, in United States v. Eisele, D.C., 52 F.Supp, 105, seems to have adopted the view of the defendants herein contended for when at page 108 he says:

"Defendant's testimony after the claim of privilege, covering approximately 300 pages, relates to transactions, matters, and things covered by the indictment. It was the examiner's duty, when defendant claimed this privilege, to determine from the character of the questions asked and the circumstances of the inquiry, whether there was a likelihood that the answers might be incriminating, and if there was such likelihood, it was his duty to determine whether he wished to exchange immunity for testimony. If he did not wish so to do, he should have stopped further inquiry. He elected to take the other course."

██ From the foregoing analysis of the facts and the law which seems to be applicable thereto, this Court can reach no other conclusion than that the prosecution under the indictment here concerns matters substantially connected with the transactions in regard to which the defendants as witnesses under subpoena were compelled to testify in the prior investigation. The witness should not be confronted with making a choice when giving his testimony under compulsion as to whether his situation would be more advantageous to himself to admit incriminating circumstances for the purpose of securing immunity or deny such incriminating circumstances and thereby become subject to liability for perjury. The laws of Congress adopted for the purpose of carrying the Fifth Amendment into practical effect relieve the witness of making this choice and fix his status.

For the reasons stated, the special plea in bar on behalf of the defendants will be sustained and an appropriate judgment may be entered accordingly.