**REDKEN LABORATORIES, INC.,**
**Petitioner–Appellee,**

v.

**Herb LEVIN d/b/a Levin Beauty Supply and Levin Beauty Supply, Inc., a Michigan corporation, Respondents–Appellants.**

No. 87–1363.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1988.

Decided March 29, 1988.

Rehearing and Rehearing En Banc
Denied May 16, 1988.

Alex Rhodes (argued), Rhodes & Boller, Southfield, Mich., for respondents-appellants.

Grady Avant, Jr. (argued), Dickinson, Wright, Moon, VanDusen & Freeman, Detroit, Mich., Jerry L. Johnson, for petitioner-appellee.

Before KEITH, MARTIN and RYAN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Herb Levin, who does business as Levin Beauty Supply and Levin Beauty Supply, Inc., appeals an order prohibiting the sale of trademarked products and requiring Levin to pay Redken Laboratories, Inc. $25,000 in damages for violation of a permanent injunction, attorneys fees incurred by Redken in obtaining the order, and further requiring Levin to post a $25,000 bond for the benefit of Redken. The bond is conditioned upon Levin's future compliance with the permanent injunction.

Levin argues on appeal that the district court committed error when it: (1) refused to admit into evidence Levin's "sales slips;" (2) admitted into evidence Redken's standard distributor agreement and professional services policy statement; (3) ruled that Levin's refusal to identify Redken distributors who had supplied Levin with Redken products was relevant; (4) decided to impose sanctions; and (5) imposed sanctions that were excessive and contrary to law. After a review of the relevant facts, we will address these contentions in order.

This case has its origins in 1976 when Redken sued Levin for unauthorized sales of Redken products. At that time, Redken also sought a permanent injunction prohibiting Levin from selling Redken products. Prior to that date, Redken had granted to Levin a contractual right to sell its products. These products, which were generally sold only in barber shops or beauty parlors, carried the Redken trademark and

were properly registered under federal trademark laws. Redken could exercise complete control as to sales of these products. Furthermore, Redken could restrict its distributors from selling particular products to certain types of customers.

On May 24, 1977, Levin and Redken stipulated that all the facts in Redken's first claim against Levin were true. These facts were incorporated into the final judgment entered by the district court on June 10, 1977.

The stipulated Order stated that Levin had engaged in unfair competition by selling Redken "For Professional Use Only" products to the general public. The district court permanently enjoined Levin from advertising, offering for sale, or selling such products.

On October 12, 1977, Levin was found by the district court to have violated the permanent injunction. The court noted at that time that Redken not only had legitimate business reasons to seek the enforcement of the injunction, but they also had reasonable concerns that they could be exposed to potential liability with the possible misuse of the product by nonprofessionals. As a result, Levin was ordered to post a bond of $25,000 for the benefit of Redken. The bond was "conditioned upon his [Levin's] not in the future violating the terms of this injunction or selling any Redken 'Professional Use Only' products."

Slightly more than one year later, Levin successfully moved the district court for the return of the bond. On January 10, 1979, the district court granted Levin's motion, but warned Levin that:

> if there was any repetition of that [violation of the permanent injunction] you could expect to be dealt with very harshly by this court insofar as contempt citations because you had your one bite of the apple, and anything further would be construed as complete and purposeful and willful disregard and disdain of the lawful orders of this court and will be dealt with accordingly.

Despite the stern advice of the district court, Levin again violated the injunction in January 1987. On January 6, 1987, Robert D. Allen, Contract Compliance Manager for Redken, visited two stores owned by Levin. At the Levin Beauty Supply, Allen found Redken "For Professional Use Only" products for sale to the general public and was able to purchase four such products. That same day, Allen visited Levin Beauty Supply Outlet in West Bloomfield, Michigan, where he also found Redken "For Professional Use Only" products for sale to the general public. He again purchased four such products.

Because of what Allen had found, Redken petitioned the district court for an order to show cause as to why Levin should not again be held in contempt for violation of the permanent injunction. Redken's petition was granted and on March 25, 1987, a show cause hearing was held. Levin did not dispute that they had sold "For Professional Use Only" products in violation of the injunction. Rather, Levin attempted to argue that the products appeared on their shelves inadvertently because of the negligence of Redken distributors who had incorrectly shipped to Levin the wrong products. The district court apparently disbelieved Levin's explanation and found Levin to have violated the permanent injunction and to be in contempt. Redken was awarded $25,000 in damages, plus its expenses in actual attorney's fees associated with obtaining the Order. Levin was also required to again post a $25,000 bond for the benefit of Redken, conditioned upon Levin's future compliance with the permanent injunction.

■ Before we turn to the assignments of error raised by Levin in this appeal, we observe that this is not a normal case under Rule 65 where a party was charged with violating an injunction of which he was unaware. Here, Redken early on obtained an injunction because of Levin's unauthorized sales of Redken trademarked and registered products. Levin knew of the injunction and yet continued to engage in their prohibited sale to the general public. Unlike ex parte temporary restraining orders under Rule 65(b), Federal Rules of Civil Procedure, which are often sought to stop the sale of unauthorized trademarked properties, often exacting manifest injus-

tices on innocent and unidentified parties, and which are little tolerated by this court, this case represents the proper issuance and enforcement of an injunction under Rule 65(a) against an identified party who has continued to injure another's legislatively protected and registered rights and property. We turn now to the issues raised by Levin in this appeal.

■ As part of its defense, Levin sought to prove that it had not ordered "For Professional Use Only" products from any of its sources for Redken products. To accomplish this, Levin attempted to introduce into evidence an incomplete set of undated "sales slips" which did not designate any purported purchaser. We note that for a business record to be admissible under Rule 803(6), Federal Rules of Evidence, the record must satisfy four requirements: (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. *See Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1258 (9th Cir. 1984). The sales slips offered by Levin do not come close to meeting these requirements. The sales slips were undated, did not indicate the customer to whom the goods were alleged to have been sold, were not in the custody of an employee charged with keeping the records, and, even more troubling, the defendants admitted that these slips were not all of the slips because "they don't save them all." We believe, therefore, that the district court was fully justified in excluding this evidence.

■ Levin's second assignment of error is that the district court erroneously admitted into evidence Redken's standard distributor agreement and professional services policy statements pursuant to Rule 403, Federal Rules of Evidence. We note, as an initial matter, that the decision of whether to admit evidence under Rule 403 is placed within the sound discretion of the trial judge. Thus, "a trial judge's ruling will not be overturned unless he has clearly abused his discretion." *Cathey v. Johns–Manville Sales Corp.,* 776 F.2d 1565 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986). We believe these documents were not unduly prejudicial and were certainly probative on the question of whether a Redken distributor may have inadvertently shipped the "For Professional Use Only" products. Because these documents demonstrate the consequences a distributor will suffer by shipping professional products to stores such as Levin's, it can be inferred that the distributor will be careful not to inadvertently make such shipments. We do not believe the district court judge abused its discretion in allowing these documents into evidence.

■ Levin's third assignment of error is that the district court was wrong to consider relevant Levin's refusal to identify Redken distributors who had supplied Levin with Redken products. During cross examination, Mr. Levin was asked the identity of the Redken distributors who had supplied his stores with Redken products since the issuance of the permanent injunction. The district court judge instructed Levin that he did not have to answer the question but warned that failing to do so would affect the credibility of his defense and testimony. Levin declined to answer the question after his counsel's objection to the question had been overruled. We believe this entire line of questioning was relevant, and it was proper for the court to consider Mr. Levin's refusal to answer. We agree with the district court and believe that this line of questioning was relevant to Levin's defense of inadvertent violation of the injunction, wherein he alleges that a Redken distributor caused the violation of the injunction.

■ Levin assigns as his fourth error the decision of the district court to impose sanctions for his violation of the permanent injunction. As we have noted in the past, "although civil contempt may serve incidentally to vindicate the court's authority, its primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance." *TWM Mfg.*

*Co. v. Dura Corp.,* 722 F.2d 1261, 1273 (6th Cir.1983), *cert. denied,* —— U.S. ——, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986). We do not believe there is any basis to the argument that the district court abused its discretion in imposing sanctions upon Levin. We also reject Levin's fifth assignment of error, that the sanctions were excessive. Levin has known the consequences of a subsequent violation of the permanent injunction from the time the district court granted Levin's motion for return of the $25,000 bond in 1978. The award of $25,000 to Redken is in accord with the district court's determination nearly ten years ago, when it ordered Levin to post a $25,000 bond, as an approximation of the damages that would be sustained by Redken in the event of Levin violating the injunction. The award is proper today. We also note that "the award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding." *TWM,* 722 F.2d at 1273. Finally, we uphold the decision of the district court ordering Levin to post a $25,000 bond to the benefit of Redken, conditioned upon Levin's future adherence to the permanent injunction. This bond is identical to the one first imposed by the district court in 1977 for violation of the permanent injunction.

For the reasons above, the decision of the district court is hereby affirmed.