244

In re Trial Subpoena Duces Tecum to
CUSTODIAN OF RECORDS OF
VARIETY DISTRIBUTING, INC.

UNITED STATES of America,
Plaintiff–Appellee,

v.

ELLWEST STEREO THEATRES OF
MEMPHIS, INC. d/b/a Executive
South; Charles Long; Rodney Skinner;
and Diane Wells, Defendants,

Charles Mello (90–5646),
Witness–Appellant,

Elliot Siegel (90–5662),
Witness–Appellant.

Nos. 90–5646, 90–5662.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 22, 1991.
Decided Feb. 26, 1991.

W. Hickman Ewing, Jr., U.S. Atty., Dan
Newsom, Asst. U.S. Atty. (argued), Memphis, Tenn., for U.S.

Kemper B. Durand (argued), Thomason,
Hendrix, Harvey, Johnson, Mitchell,
Blanchard, Memphis, Tenn., for Charles
Mello.

John H. Weston, Beverly Hills, Cal., for
Elliot Siegel.

Before KEITH and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Appellant Charles Mello, a witness in the obscenity trial of *United States v. Ellwest Stereo Theatres of Memphis, Inc.*, appeals the district court's charge of contempt of court for refusing as custodian of records of Variety Distributing, Inc. to produce records subpoenaed by plaintiff-appellee, the United States. Appellant Elliot Siegel, also a witness in the trial of defendant Ellwest Stereo, appeals the district court's charge of contempt of court for refusing as custodian of records for Western Visuals, Inc. to authenticate records subject to a subpoena duces tecum in order for the records to be submitted into evidence under Federal Rule of Evidence, Rule 803(6), the business records exception to the hearsay rule. For the following reasons, we affirm the decision of the district court.

## I.

On September 27, 1989, a federal grand jury returned a one-count indictment charging Ellwest Stereo Theatres of Memphis with engaging in the business of selling or transferring obscene matter in violation of 18 U.S.C. § 1466. Charles Long and Rodney Skinner, corporate officers of Ellwest, and Diane Wells, a sales clerk, were also charged. On April 16, 1990, a jury was selected to hear the trial. Because the district judge was involved in another trial, the trial in the present case did not commence until April 30, 1990. Interstate shipment is a necessary element of the offense charged in the indictment. On April 19, 23, and 24, the government issued subpoenas duces tecum to the following corporations in order to prove interstate shipment of the particular videotape, entitled *Blacks & Blondes, Vol. 7*, which was involved in the trial:

1. To the custodian of records of Western Visuals, Inc. of California, the corporation alleged to have produced and distributed the video.

2. To the custodian of records of Variety Distributing, Inc. of Michigan, the corporation alleged to have distributed the video.

3. To the custodian of records of Modern Bookkeeping of Michigan, the corporation where Ellwest was alleged to send its account records.

Charles Mello, the appellant in appeal No. 90–5646, appeared at trial as custodian of records for Variety Distributing, Inc., but refused to produce the corporate business records subject to the subpoena on the ground that the act of production could incriminate him personally in violation of the Fifth Amendment. The district court found that, as custodian of corporate records, Mello did not have a Fifth Amendment right to refuse to produce the records and held appellant Mello and the corporation, Variety Distributing, Inc., in contempt of court for refusing to produce the records.[1]

Both witnesses Mello and Siegel had requested use immunity under 18 U.S.C. § 6002 in exchange for producing and authenticating the subpoenaed records, but the request was denied by the prosecution.

Elliot Siegel, the appellant in appeal No. 90–5662, appeared at trial as custodian of records for Western Visuals, Inc. Two subpoenas had been served on Western Visuals. The first required production of the following:

All invoices, records and other documentation evidencing distribution of videotapes (and copies) to the following entity:

Variety Distributing
1112 N. Saginaw
Durand, Michigan 48429

Variety Distributing
P.O. Box 408
Durand, Michigan 48429

Variety or Variety Distributing (anywhere in Michigan) [.] Above requested

---

1. The district court also held Janet Fournier, who appeared as custodian of records for Modern Bookkeeping, in contempt for refusing to produce subpoenaed records. However, Ms. Fournier did not bring an appeal.

records should be for a period of between January 1988 to the present date. Appellant Siegel produced the records requested by this subpoena and identified them as the documents called for by the subpoena. However, he refused to testify that they were records which the corporation regularly kept in the course of its regular business activities. Such testimony was necessary in order to have the records admitted into evidence at trial under the business records exception to the hearsay rule, Federal Rule of Evidence, Rule 803(6).[2] The district court found that appellant Siegel did not have a Fifth Amendment right to refuse to authenticate the records and held appellant Siegel and the corporation, Western Visuals, Inc., in contempt of court for refusing to authenticate the records.

The second subpoena issued to Western Visuals demanded production of a videotape entitled *Blacks & Blondes, Vol. 7* and all records and documents showing production and distribution of the videotape to four entities, including corporate defendant Ellwest Stereo, and to three individuals, including individual defendants Long and Skinner. Appellant Siegel failed to produce a copy of the videotape and would not state whether the videotape was turned over to the agent serving process pursuant to the subpoena. Appellant Siegel also refused to testify whether any of the documents he had produced were the documents requested in the second subpoena. However, the district judge did not hold appellant Siegel in contempt for the failure to produce the videotape or to state whether the documents produced were those requested by the second subpoena.[3]

Because a novel legal issue was involved, the court did not direct that the witnesses be jailed until they purged themselves of contempt, but instead released the witnesses upon their own recognizance. Both appellants Siegel and Mello appealed the district court's determination that they and the corporations that they represent are in contempt of court. Ultimately, the court signed documents releasing appellants from custody during the pendency of this appeal.

The obscenity trial of *United States v. Ellwest Stereo Theatres* proceeded to conclusion without the business records at issue in this appeal being submitted into evidence. The two corporate officers of Ellwest, Charles Long and Rodney Skinner, were convicted, and the sales clerk, Diane Wells, was acquitted.

Appellants-witnesses Mello and Siegel timely filed this appeal of their contempt charges.

## II.

We must first decide whether the district court erred in determining that appellant Mello, as custodian of records of Variety Distributing, Inc., did not have a Fifth Amendment right to refuse to produce the corporate records subject to a subpoena duces tecum.

■ Appellant Mello concedes that he was not entitled to refuse to produce the subpoenaed records on the ground that they could incriminate him personally, because the Supreme Court has dispositively held that a custodian of corporate records may not resist a subpoena for corporate records on the ground that the act of pro-

---

**2.** Federal Rule of Evidence, Rule 803(6) states:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**3.** In fact, appellant, through his counsel, had provided the videotape beforehand. Because the district court took no action in regard to the second subpoena, appellant Siegel's failure to produce the videotape or to state whether the documents produced were those requested by the second subpoena is not before us in this appeal.

duction will incriminate him in violation of the Fifth Amendment. *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988).

We agree that appellant Mello's reading of *Braswell* is correct. In *Braswell,* the Supreme Court rejected the petitioner's argument that even though corporations are not protected by the Fifth Amendment, his act of producing corporate documents as the custodian of corporate records had independent testimonial significance which would incriminate him individually and compulsion of the act was thus prohibited by the Fifth Amendment. *Id.* at 111–12, 108 S.Ct. at 2291–92. The Court stated, "A custodian may not resist a subpoena for corporate records on Fifth Amendment grounds." *Id.* at 113, 108 S.Ct. at 2290. The Court reasoned that a custodian of business records is the representative of a collective entity, the corporation, and acts as the corporation's agent in producing corporate business records. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of a privilege against self-incrimination by the corporation, which possesses no such privilege.

> [T]he Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. Artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government. Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege.

*Id.* at 109–10, 108 S.Ct. at 2291 (citation omitted). *See also In re Grand Jury Proceedings (Morganstern),* 771 F.2d 143, 148 (6th Cir.) (en banc), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985) (the privilege against compulsory self-incrimination is a personal one and no collective entity may claim it).

The Supreme Court in *Braswell* stated that if the petitioner had conducted his business as a sole proprietorship, its decision in *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) would require that he be provided the opportunity to show that his act of production would entail testimonial self-incrimination as to admissions that the records existed, were in his possession, and were authentic. 487 U.S. at 104, 108 S.Ct. at 2288. However, because the official records of an organization are held by a custodian of business records in a representative rather than a personal capacity, production cannot be the subject of a personal privilege against self-incrimination even though the contents of the records might tend to incriminate the custodian personally. *Id.* at 107, 108 S.Ct. at 2289. The Court found that the "corporate entity doctrine" applied regardless of the corporation's size, *Id.* at 108, 108 S.Ct. at 2290, and regardless of whether the subpoena was issued to the custodian of records of the corporation or to a specific individual within the corporation.[4]

Thus, the Supreme Court's decision in *Braswell* makes clear that in the present case, the district court was correct in holding appellant Mello, the custodian of corporate records of Variety Distributing, Inc., in contempt of court for refusing to produce the subpoenaed corporate records on the ground that they might tend to personally incriminate him. As the custodian of records of Variety Distributing, appellant Mello does not have a Fifth Amendment privilege against producing corporate documents subject to a subpoena duces tecum.

### III.

Appellant Siegel produced subpoenaed documents, but then refused to authenticate them. Appellant Siegel argues that even though under *Braswell* a corporate agent is required to produce corporate

---

**4.** In *Braswell,* the subpoena was issued to the defendant as the president of two corporations.

records, he cannot be compelled to authenticate the records for admission into evidence under the business records exception to the hearsay rule, Federal Rule of Evidence, Rule 803(6). Rule 803(6) requires that the custodian of business records state that (1) the records must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. *Redken Laboratories, Inc. v. Levin,* 843 F.2d 226, 229 (6th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). This court has held that the custodian need not be in control of or have individual knowledge of the particular corporate records subject to the subpoena, but need only be familiar with the company's recordkeeping practices. *Dorsey v. City of Detroit,* 858 F.2d 338, 342 (6th Cir.1988); *United States v. Reese,* 568 F.2d 1246, 1252 (6th Cir.1977).

Appellant Siegel refused to make the statements required to authenticate the records on the ground that Western Visuals, where he is employed, is the target of a federal obscenity investigation and these statements might incriminate him personally. Appellant Siegal argues that the Supreme Court's decision in *Braswell* does not overrule its prior decision in *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), in which the Court held that the custodian of a union's books and records could, on the ground of his privilege against self-incrimination under the Fifth Amendment, lawfully refuse to answer questions asked by the grand jury as to the whereabouts of the union's books and records after he had failed to produce them. Appellant Siegel argues that he, like the petitioner in *Curcio,* "cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony." *Id.* at 124, 77 S.Ct. at 1149.

We find, to the contrary, that the Court in *Curcio* distinguished the situation in *Curcio* from that of the present case. In *Curcio,* the petitioner, as secretary-treasurer of the union's records, refused to produce the subpoenaed books and records and then was held in contempt of court for refusing to answer questions about their location. The government conceded that petitioner Curcio had made an adequate showing that answering the demanded questions might tend to incriminate him personally. *Id.* at 121, 77 S.Ct. at 1147. The Supreme Court agreed that in the context of charges that petitioner's union was allegedly a "phantom local" and dominated by gangsters and racketeers, answers to questions, seeking petitioner to disclose the whereabouts of books and records and the names of persons in whose possession the missing books could be found, were incriminating. *Id.* at 121 n. 2, 77 S.Ct. at 1148 n. 2. However, the Court distinguished this situation, in which the government sought to compel the custodian to do more than fulfill his obligation as records' custodian to identify documents already produced, from cases which held that "a corporate officer who has been required by subpoena to produce corporate documents *may also be required, by oral testimony, to identify them.*" *Id.* at 125, 77 S.Ct. at 1150 (emphasis added). The Court stated that in such cases:

> [t]he custodian's act of producing books or records in response to a subpoena *duces tecum* is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or *authenticate the documents for admission in evidence* merely makes explicit what is implicit in the production itself. The custodian is subjected to little, if any, further danger of incrimination.

*Id.* (emphasis added). The testimony demanded of the custodian in such cases is "auxiliary" to the act of producing unprivileged corporate records and is different from the type of explicitly incriminating oral testimony sought from petitioner Curcio that went beyond his representative duty as records' custodian to produce, iden-

tify, and authenticate records subject to a subpoena.

The Supreme Court in *Curcio* then referred to the leading case of *United States v. Austin–Bagley Corp.*, 31 F.2d 229, 234 (2nd Cir.), *cert. denied*, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929), which explained the scope and limitation of the "auxiliary to production" doctrine:

> In that case [*Austin–Bagley*], the secretary-treasurer of a corporation, who was charged with conspiracy to violate the National Prohibition Act, was called to the stand by the Government and compelled to identify the minutes of the corporation. Circuit Judge Learned Hand, for the Court of Appeals upheld this procedure, stating:
>
>> "That the production of the books and documents could be compelled, even if they contained entries incriminating the accused, is now well-settled law.... However, the availability of the documents does not necessarily determine that of the testimony by which they may be authenticated. Conceivably it might be possible to force their production and yet their possessor be protected from proving by his oath that they were what they purport to be.... While, therefore, we do not disguise the fact that there is here a possible, if tenuous, distinction, we think that the greater includes the less, and that, since the production can be forced, it may be made effective by compelling the producer to declare that the documents are genuine.... Hence it appears to us that the case [*Heike v. United States*, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450 (1913)] determines that testimony auxiliary to the production is as unprivileged as are the documents themselves. By accepting the office of custodian the holder not only exposes himself to producing the documents, but to making their use possible without requiring other proof than his own."

*Id.* 354 U.S. at 125–26 n. 4, 77 S.Ct. at 1150 n. 4.

The Supreme Court's most recent pronouncement on the issue of whether a custodian of records may invoke the privilege against self-incrimination when producing corporate records upholds the distinction between oral testimony and "act of production" testimony made in *Curcio*. *Braswell*, 487 U.S. at 115 n. 7, 108 S.Ct. at 2293 n. 7. In *Braswell*, the petitioner asserted that the Court's *Curcio* decision stands for the proposition that although the contents of a collective entity's records are unprivileged, a representative of a collective entity cannot be required to provide testimony about those records. *Id.* 487 U.S. at 113–14, 108 S.Ct. at 2292–93. The Court found such a reading of *Curcio* to be flawed, stating:

> In distinguishing those cases in which a corporate officer was required to produce corporate records and merely identify them by oral testimony, the [*Curcio*] Court showed that it understood the testimonial nature of the act of production: "The custodian's act of producing books or records in response to a subpoena *duces tecum* is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or *authenticate the documents for admission in evidence* merely makes explicit what is implicit in the production itself." *Id.*, at 125, 77 S.Ct. at 1150.

*Id.* 487 U.S. at 114, 108 S.Ct. at 2293 (emphasis added). The Court in *Braswell* thus indicated that based on this distinction, the petitioner would have no right to refuse to fulfill his obligation as records' custodian to identify and authenticate the documents produced for admission into evidence. According to the Court, although elements of compulsion may clearly be present in the production of records, the more difficult issues are whether the tacit averments inherent in the act of production are "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. *Id.* at 103, 108 S.Ct. at 2287. The Court stated that although previously it had not focused on the testimonial aspect of the act of production, the Court did not think such a focus would have affected the results

reached in prior cases applying the corporate entity doctrine. *Id.* at 111, 108 S.Ct. at 2291.

■ The district court in the present case reasoned that even though *Braswell* applied to a grand jury proceeding in which all the custodian would have to do is identify the documents as those demanded by the subpoena, the additional statements which would be required of appellant Siegel in order to get the records admitted into evidence at trial "merely made explicit what is implicit in the act of production itself." We agree. The only further statements which appellant Siegel, as custodian of records, initially would have to make under the business records exception to the hearsay rule are that the records were kept in the course of a regularly conducted business activity, it was the *regular practice of* the business to make the record, and the record was made by or from information transmitted by a person with knowledge.[5] Even though these statements consist of oral testimony, the Court in *Braswell* stated that the distinction between the communicative or noncommunicative nature of arguably incriminating disclosures does not render the collective entity rule obsolete. *Id.* at 109, 108 S.Ct. at 2290.

> But individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination. And the official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the sub-

ject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally.

*Id.* at 110–11, 108 S.Ct. at 2290–92, citing *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944).

■ Because the custodian of corporate records is acting in a representative rather than a personal capacity, he is protected against the future evidentiary use of his testimony ancillary to the act of production. The Court in *Braswell* stated:

> Because the custodian acts as a representative, the act is deemed one of the corporation and not the individual. Therefore, the Government concedes, as it must, that it may make no evidentiary use of the "individual act" against the individual. For example, in a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian. The Government has the right, however, to use the corporation's act of production against the custodian. The Government may offer testimony—for example, from the process server who delivered the subpoena and from the individual who received the records—establishing that the corporation produced the records subpoenaed. The jury may draw from the corporation's act of production the conclusion that the records in question are authentic corporate records, which the corporation possessed, and which it produced in response to the subpoena. And if the defendant held a prominent position within the corporation that produced the records, the jury may, just as it would had someone else produced the doc-

---

5. We do not reach the issue of whether appellant Siegel may refuse to answer further questions concerning the corporate records on cross examination. Because appellant Siegel refused to authenticate the records, defendant Ellwest's attorney had no right to cross examine appellant Siegel. The district court was correct in determining that cross examination raises a different legal issue from the one presented by Siegel's refusal to authenticate the records. If Siegel had authenticated the records and then refused to answer further questions on cross examination, the issue presented would be whether the records could be admitted into evidence without denying defendant Ellwest's right to cross examination. The resolution of this issue is not before this court.

uments, reasonably infer that he had possession of the documents or knowledge of their contents. Because the jury is not told that the defendant produced the records, any nexus between the defendant and the documents results solely from the corporation's act of production and other evidence in the case.

*Id.* at 118, 108 S.Ct. at 2295.

■ Thus, in the present case, under the logic of *Braswell*,[6] appellant Siegel's testimony, as custodian of corporate records, concerning the fact that the records were regularly kept in the course of a regularly conducted activity, would not be able to be used in a possible subsequent obscenity prosecution against Siegel to incriminate him personally. The jury in a subsequent trial would not be told that it was appellant Siegel who produced and gave the limited testimony needed to authenticate the business records in the present case. The existence of the records could be used, however, against the corporation, Western Visuals, Inc., and it would be appellant's Siegel's position in the corporation, which would have to be established independently, that would incriminate him, not his production or testimony concerning the records.

■ Because a custodian of corporate records has no necessary relation to the *contents* of the documents which he has produced, we do not believe that statements that he is familiar with the company's recordkeeping practices and knows that the company regularly keeps such records in the course of a regularly conducted business activity is sufficiently incriminating in and of itself. In the present case, the authentication would require appellant Siegel to testify that shipping videos is a regular business activity and the corporation regularly keeps records of its shipments. Appellant Siegel argues that such testimony would reveal that he is a

decisionmaker in Western Visuals, a corporation that is the subject of a federal obscenity investigation, but we do not agree. We do not think that a corporation should be able to avoid the consequences of a subpoena issued to the custodian of corporate records in general, rather than to a specific individual within the corporation, by designating as custodian of corporate records an individual who asserts that his knowledge that the corporation regularly keeps records in the course of its regularly conducted activities is incriminating. As the Court in *Curcio* stated, authentication merely makes explicit what is implicit in the act of production and "the custodian is subjected to little, if any, further danger of incrimination." 354 U.S. at 125, 77 S.Ct. at 1150.

The Supreme Court's decision in *Braswell* rejects appellant Siegel's argument that a limitation on the evidentiary use of a custodian's act of production is the equivalent of constructive use immunity, which is barred by the Court's decision in *United States v. Doe*, 465 U.S. at 616–17, 104 S.Ct. at 1244.[7] The Court in *Braswell* stated:

Rather, the limitation is a necessary concomitant of the notion that a corporate custodian acts as an agent and not an individual when he produces corporate records in response to a subpoena addressed to him in his representative capacity.

We leave open the question whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records.

*Id.* at 118–19 n. 11, 108 S.Ct. at 2295 n. 11. In the present case, appellant Siegel does not allege that he is the sole employee and officer of Western Visuals, Inc. Thus, in a

---

**6.** This court in *In re Grand Jury Proceedings (Morganstern)* has also stated, "It is well settled in this circuit that if the government later attempts to implicate the custodian on the basis of the act of production, evidence of the fact is subject to a motion to suppress." 771 F.2d at 148.

**7.** In *Doe*, the Court declined to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of a formal grant of use immunity by the Department of Justice under 18 U.S.C. §§ 6002 and 6003. The Court in *Doe* stated, "Congress expressly left this decision exclusively to the Justice Department." 465 U.S. at 616–17, 104 S.Ct. at 1244.

possible subsequent prosecution against Western Visuals and its employees, the jury would not know that in the present case it was Siegel who produced and authenticated the records (if he had done so).

For these reasons, we believe that in the circumstances of the present case,[8] appellant Siegel, as the custodian of corporate records of Western Visuals, Inc., does not have a Fifth Amendment privilege to refuse to authenticate the corporate records which he had produced in response to a subpoena duces tecum.

### IV.

To conclude, the district court's decision to hold appellant Mello and Variety Distributing, Inc. in contempt of court for refusing to produce corporate records subject to a subpoena duces tecum is hereby AFFIRMED. The decision of the district court to hold appellant Siegel and Western Visuals, Inc. in contempt of court for refusing to testify that the records produced were regularly kept in the regular course of business is hereby AFFIRMED.

**8.** The subpoena was issued to the custodian of corporate records, not to a specific individual within the corporation. Appellant Siegel and Western Visuals, Inc. are not defendants in the present action.