70 F.3d 1273
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
THORN APPLE VALLEY, INC., Plaintiff-Appellee,
v.
ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant.
 No. 94-1841.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1995.
 
 Before: CONTIE, NELSON, and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 In this diversity action concerning an insurance coverage dispute, the defendant, Allianz Life Insurance Company of North America, appeals from a judgment in favor of the plaintiff, Thorn Apple Valley, Inc., rendered following a bench trial. Allianz contends that the district court erred in its construction of the contract between the parties; in admitting certain hospital bills into evidence; and in concluding that Thorn Apple was entitled to postjudgment interest under both state and federal statutes. While the first two assignments of error are without merit, we conclude that the district court erred in its award of interest to Thorn Apple.
 
 I.
 
 2
 Thorn Apple is the plan sponsor and administrator of a self-funded benefit plan under which it provides medical benefits to its employees and their eligible dependents. In December 1985, Thorn Apple obtained an insurance policy from Allianz, in order to provide excess risk coverage in connection with the Thorn Apple plan. The Allianz policy provided for a deductible in the form of an "attachment point." For the years in question in this suit, the attachment point was $200,000 in 1987, while in 1988, it was lowered to $75,000.
 
 
 3
 Mary Basler worked as an hourly employee for Thorn Apple since 1972, and was covered under the Thorn Apple plan. In 1981, she married Ralph Hoffer, and began paying premiums to include him as a dependent under the Thorn Apple plan. The Hoffers' marriage certificate indicates that Mr. Hoffer was "unemployed-handicapped," with no further explanation. Mr. Hoffer suffered from insulin dependent brittle diabetes mellitus, a serious disease which caused Mr. Hoffer to become blind in 1977. Mr. Hoffer received Social Security disability benefits from 1977 until he died in 1988. Despite his blindness and diabetes, Mr. Hoffer, through late 1987, enjoyed a reasonably active life, including activities outside the home.
 
 
 4
 Section 22 of the Thorn Apple plan provides that a dependent "shall be covered simultaneously with employees covering them as dependents providing they are not in a disabled condition" at the time they initially become eligible for coverage. The Thorn Apple plan provides the following definition of "disabled condition":
 
 
 5
 A dependent is in a disabled condition if he is confined because of illness or injury in a hospital or similar institution or at home or elsewhere so as to be unable to carry on any substantial part of the regular and customary activities of a person of like age and sex in good health....
 
 
 6
 The Allianz policy, in turn, provides that Allianz will only pay excess risk insurance to the extent that Thorn Apple is obligated under the terms of its plan.
 
 
 7
 In 1987, Mr. Hoffer was admitted to St. Mary's Health Services for treatment of end-stage kidney disease, and received a kidney transplant shortly thereafter. Mr. Hoffer remained hospitalized at St. Mary's until his death in August 1988.
 
 
 8
 In February 1988, Thorn Apple received the first bill from St. Mary's in connection with Mr. Hoffer's hospitalization, in the approximate amount of $200,000. A second bill, for approximately $450,000, arrived in April 1988. At this point, Thorn Apple paid approximately $75,000 on the $650,000 due. Thorn Apple then notified Allianz that it would be making a claim under the excess risk policy.
 
 
 9
 In May 1988, however, Thorn Apple conducted a thorough review of the Hoffer file, and discovered the "unemployed-handicapped" notation in the marriage license. Although it had heretofore paid all bills submitted on behalf of Mr. Hoffer, and had accepted premium payments on his behalf, it concluded that Mr. Hoffer must have been disabled at the time of marriage, and thus not covered under the Thorn Apple plan. There followed a long period of negotiations in which Thorn Apple sought a refund of its $75,000, on the ground that Mr. Hoffer was never a qualified dependent. Eventually, however, Thorn Apple became persuaded, on a number of bases, that it was obligated to cover Mr. Hoffer's medical expenses, and it paid a total of $203,752.14 for Mr. Hoffer's medical expenses for 1987 and 1988.
 
 
 10
 Next, Allianz balked at paying. Allianz took the position that Thorn Apple was right the first time, and that because Thorn Apple did not owe any money on behalf of Mr. Hoffer, Allianz did not owe any money to Thorn Apple. With that, Thorn Apple filed this suit against Allianz.
 
 
 11
 The case was tried to the court sitting without a jury. Thorn Apple attempted to introduce an exhibit, consisting of bills from St. Mary's, showing the breakdown of what it paid for 1987 and what it paid for 1988. The allocation of the payments is significant because of the attachment point for Allianz's potential liability, which was $200,000 in 1987, but only $75,000 in 1988. The exhibit showed that only $520 of the money paid was allocable to 1987, because the vast majority of the 1987 amount was covered by Medicare. The bulk of the money, $203,232.14, was allocable to 1988, where the attachment point was far lower, and Allianz's concomitant obligation was far higher. In short, Thorn Apple claimed that Allianz owed it $203,232.14, less the $75,000 governed by the attachment point for 1988.
 
 
 12
 Joyce Bignell, an employee at St. Mary's Hospital for more than twenty years, and a billing clerk for more than nine, identified the documents in question as duplicate copies of St. Mary's billings for 1987 and 1988, which St. Mary's submitted for payment to Thorn Apple and Medicare, and which Bignell prepared. The bills specify, for each year, the amounts that were billed to Thorn Apple and to Medicare. Bignell acknowledged that none of the information regarding the breakdown of Medicare payments had been generated by St. Mary's; instead, the information was provided by Travellers Insurance Company on behalf of Medicare. It is usual that Medicare (or Travellers) determines the amount that Medicare will pay, and informs St. Mary's accordingly. The district court admitted the bills under the so-called catch-all exception of Fed.R.Evid. 803(24).
 
 
 13
 The district court also concluded that Mr. Hoffer was not disabled within the meaning of section 22, because Mr. Hoffer was not confined in any physical location so as to be unable to carry on a substantial part of the regular activities of a like person. Accordingly, it rendered a judgment on behalf of Thorn Apple for $128,232.14. The court also awarded interest under Mich.Comp.Laws Ann. Sec. 600.6013(5), as well as postjudgment interest under 28 U.S.C. Sec. 1961(c). In short, the court awarded Thorn Apple double interest for the period from the entry of judgment through satisfaction of judgment.
 
 II.
 A.
 
 14
 Allianz first argues that Ralph Hoffer was ineligible for benefits under Thorn Apple's Plan, because he was in a "disabled condition" within the meaning of section 22. Allianz contends that the word "confined" must be understood as having a broader meaning than restraint in a particular physical location, and that, likewise, "elsewhere"--which modifies "confined"--refers to something other than a physical location. Therefore, Allianz concludes, Mr. Hoffer's blindness "confined" him "elsewhere," within the meaning of section 22, because wherever he went ("elsewhere"), he was always restricted or limited ("confined") by his blindness.
 
 
 15
 In considering a district court's decision following a bench trial, this court reviews findings of fact under the clearly erroneous standard. Fed.R.Civ.P. 52(a). Conclusions of law, on the other hand, are reviewed de novo, Affiliated FM Insurance Co. v. Owens-Corning Fiberglas Corp., 16 F.3d 684, 686 (6th Cir.1994), as are the district court's legal conclusions as to state law, Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). Allianz's argument presents questions of both law and fact. The proper meaning to be assigned "confined elsewhere" is a question of law, for de novo review. Whether Mr. Hoffer is "confined elsewhere" is a question of fact, to be reviewed for clear error only.
 
 
 16
 Under Michigan law, the rules for construction of an insurance contract are the same as for any other written contract. Hall v. Equitable Life Assurance Soc'y, 295 N.W. 204, 206 (Mich.1940). Not surprisingly, Michigan courts have made clear that "[a] court may not read ambiguities into a policy where none exist." Michigan Millers Mut. Ins. Co. v. Bronson Plating Co., 519 N.W.2d 864, 868 (Mich.1994). "When the words of a written contract are clear and unambiguous and have a definite meaning, ... there is no room for construction by the courts, and in such case, the language must be held to express the intention of the parties...." Manufacturers Nat'l Bank v. Auto Specialties Mfg. Co., 18 F.3d 358, 362 (6th Cir.1994) (quoting DeVries v. Brydges, 225 N.W.2d 195, 198 (Mich.Ct.App.1974)). "An insurance contract is unambiguous if it fairly admits of only one interpretation." State Farm Mut. Auto. Ins. Co. v. Snappy Car Rental, Inc., 492 N.W.2d 500, 504 (Mich.Ct.App.1992), appeal denied, 500 N.W.2d 479 (Mich.1993).
 
 
 17
 Allianz's legal argument is simply without merit. Its suggested definition ignores and, indeed, contradicts, the language in section 22, when read as a whole: "A dependent is in a disabled condition if he is confined because of illness or injury in a hospital or similar institution or at home or elsewhere so as to be unable to carry on any substantial part of the regular and customary activities of a person of like age and sex in good health...." (Emphasis added.) Although section 22 makes clear that "disabled condition" should include only individuals who are "unable to carry on any substantial part of the regular and customary activities of a person of like age and sex in good health," Allianz wishes to persuade the court that the definition should extend to any individual who is in any way physically limited. There simply is no ambiguity in the language of section 22. "Elsewhere," in the context of section 22, can fairly be read only to mean some particular physical location such as a "hospital or similar institution," or such as one's "home." Obviously, it would be impossible to provide an encyclopedic list of every such location where one would likely be confined if one were disabled, and "or elsewhere" simply demonstrates that the list is nonexhaustive.
 
 
 18
 We reject the argument that the district court clearly erred in concluding that Mr. Hoffer was not disabled. Indeed, Allianz does not even suggest that the district court clearly erred under the understanding of "disabled" so clearly dictated by the plan language; it argues clear error only in reliance on its own untenable definition of the term "disabled." The district court made detailed factual findings of the many activities in which Mr. Hoffer could and did regularly engage. There was, accordingly, adequate factual support for the district court's finding that Mr. Hoffer was not disabled.
 
 B.
 
 19
 Allianz next argues that the district court abused its discretion in admitting the bills from St. Mary's, on the grounds that they were hearsay not within any exception. In the first place, we do not review a trial court's determination whether proffered evidence is admissible under an exception to the hearsay rule for abuse of discretion. A trial court has no discretion to misapply the hearsay rule or its exceptions under the Federal Rules of Evidence. Whether proffered evidence constitutes hearsay within the meaning of Federal Rules of Evidence is a legal conclusion, subject to de novo review. United States v. Lavalley, 957 F.2d 1309, 1314 (6th Cir.), cert. denied, 113 S.Ct. 460 (1992). Allianz argues that the bills cannot be admitted as a business record pursuant to Fed.R.Evid. 803(6), because they were prepared by St. Mary's using, in part, information prepared by Travellers Insurance Company on behalf of Medicare; thus, it claims, the bills contain hearsay within hearsay.
 
 
 20
 Rule 803(6) provides that the hearsay rule does not exclude documentary evidence "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make" the document in question. Fed.R.Evid. 803(6) (emphasis added). Thus, under Rule 803(6), business records are not excluded as hearsay if the offering party can show that: (1) the records were made in the course of a regularly conducted business activity; (2) the records were kept in the regular course of business; (3) it was the regular practice of the business to make the records; and (4) the records were made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. See Redken Lab. v. Levin, 843 F.2d 226, 229 (6th Cir.), cert. denied, 488 U.S. 852 (1988).
 
 
 21
 There is no question that the St. Mary's billings are business records, within the meaning of Fed.R.Evid. 803(6). The business records exception reaches every aspect of the billings, including the information conveyed from Medicare to the St. Mary's employee, since that "information [was] transmitted by [ ] a person with knowledge ... in the course of a regularly conducted business activity." Fed.R.Evid. 803(6); see Dorsey v. City of Detroit, 858 F.2d 338, 342 (6th Cir.1988). The rationale of Rule 803(6) is that if information is sufficiently trustworthy that a business, such as St. Mary's, is willing to rely on it in making business decisions, the courts should be willing to as well. See Notes of Advisory Committee on 1972 Proposed Rules.
 
 
 22
 Because we conclude that the exhibit was correctly admitted under Fed.R.Evid. 803(6), it is not necessary for us to conduct an inquiry into the propriety of admitting the exhibit under the catch-all exception of Fed.R.Evid. 803(24), the rationale utilized by the district court. See Helvering v. Gowran, 302 U.S. 238, 245 (1947); United States v. Yakobov, 712 F.2d 20, 23 n. 3 (2d Cir.1983). Moreover, because the bills were properly admitted, Allianz's argument that Thorn Apple is not entitled to any damages because it failed to introduce any admissible evidence on this issue, plainly fails.
 
 C.
 
 23
 Finally, Allianz takes issue with the district court's judgment insofar as it imposed both state and federal postjudgment interest from the period between entry of and satisfaction of judgment. In response, Thorn Apple suggests that the district court "implicitly concluded that there is no 'conflict' between the application of state and federal law," and argues that allowing both types of interest furthers Michigan's policy of ensuring full compensation to the prevailing plaintiff, as well as the federal policy of creating an incentive to pay judgments promptly.
 
 
 24
 The choice between two potentially applicable interest rates is a purely legal question, and this court reviews the determination of such questions de novo. E.g., Loudermill v. Cleveland Bd. of Educ., 844 F.2d 304, 308 (6th Cir.), cert. denied, 488 U.S. 946 (1988); see also Bailey v. Chattem, Inc., 838 F.2d 149, 151-53 (6th Cir.), cert. denied, 486 U.S. 1059 (1988). Although the record does not reflect that Allianz ever raised to the district court the argument it makes here, we will nonetheless review the issue, because "the failure to do so would result in a manifest miscarriage of justice." Finch v. Monumental Life Ins. Co., 820 F.2d 1426, 1432 (6th Cir.1987) (citation omitted).
 
 
 25
 It was improper for the district court to impose two rates of interest simultaneously. Section 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated [by a designated formula]," which is tied to United States Treasury bills. 28 U.S.C. Sec. 1961(a). Although section 1961(a) explicitly grants postjudgment interest, it is silent on the question of prejudgment interest. This court has held that the awarding of prejudgment interest in diversity cases is controlled by state law. See American Anodco, Inc. v. Reynolds Metal Co., 743 F.2d 417, 425 (6th Cir.1984). The awarding of prejudgment interest dating from the filing of a complaint in a successful civil action is mandatory under Michigan law. See Mich.Stat.Ann. Sec. 27A.6013, Mich.Comp.Laws Ann. Sec. 600.6013. However, as this court has often made clear, federal courts should apply the postjudgment interest rate established in section 1961(a), and section 1961(a), not state law, governs the accrual of postjudgment interest. Compressed Gas Corp., Inc. v. United States Steel Corp., 857 F.2d 346, 353 (6th Cir.1988), cert. denied, 490 U.S. 1006 (1989); Chattem, 838 F.2d at 152.
 
 
 26
 In sum, only federal, not state, law governs the award of postjudgment interest. There can be no serious question that allowing both state and federal law to simultaneously impose separate interest rates would constitute an impermissible double recovery for the plaintiff.
 
 III.
 
 27
 We AFFIRM the district court's judgment that Allianz is liable to Thorn Apple, but REVERSE its judgment that Thorn Apple is entitled to duplicative postjudgment interest, and REMAND for entry of a judgment in accordance with this court's opinion.